1   JOHN A. RUSSO, City Attorney, SBN 129729
    RANDOLPH W. HALL, Assistant City Attorney, SBN 080142
2   RACHEL WAGNER, Supervising Trial Attorney, SBN 127246
    CHRISTOPHER KEE, Deputy City Attorney, SBN 157758
3   One Frank H. Ogawa Plaza, 6th Floor
    Oakland, California 94612
4   Telephone: (510) 238-7686,  Fax: (510) 238-6500
    Email:   ckee@oaklandcityattorney.org
5   26189/556553

6   Attorneys for Defendants,
    CITY OF OAKLAND, et al.

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  RAYMUNDO CHAVEZ,                           Case No. C 08-04015 CRB

12                  Plaintiff,                 **DEFENDANT OFFICERS KEVIN
                                               REYNOLDS AND CESAR GARCIA'S
13          v.                                 MOTION FOR  SUMMARY JUDGMENT
                                               ON THE GROUNDS OF QUALIFIED
14  CITY OF OAKLAND, CHIEF WAYNE G.            IMMUNITY; NOTICE OF MOTION;
    TUCKER, OFFICER K. REYNOLDS,              MEMORANDUM OF POINTS AND
15  OFFICER CESAR GARCIA, and DOES 1-20,      AUTHORITIES**
    inclusive,
16                                             Date:         April 17, 2009
                    Defendants.                Time:         10:00 a.m.
17                                             Courtroom: 8, 19th Floor

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page No(s).**

NOTICE OF MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 2

I.    INTRODUCTION ............................................................. 2

II.   STATEMENT OF FACTS ....................................................... 2

III.  LEGAL ARGUMENT ........................................................... 4

    A.    The Defendant Officers are entitled to qualified immunity for Plaintiff's first amendment claims. ............................................. 4

        1.    Plaintiff had no First Amendment right of access to the accident scene. ............................................... 5

        2.    The Officers could have reasonably believed that their conduct here was in conformity with federal law. ................ 6

        3.    The Officers' conduct was in conformity with state law. ......... 7

    B.    The Defendant Officers Are Entitled To Qualified Immunity For Plaintiff's Fourth Amendment Claims. .................................. 8

        1.    There was probable cause to detain Plaintiff for violations of California Vehicle Code Sections 22400(A) And 2800(a). ............ 8

        2.    The Officers could have reasonably believed their conduct was consistent with the Fourth Amendment. ...................... 10

    C.    The absence of a constitutional injury requires dismissal of Plaintiffs' claim under California Civil Code Section 52.1. ................... 11

    D.    There can be no viable claim against the City insofar as he suffered no constitutional injury at the hands of the individual Officers. ......... 11

IV.   CONCLUSION .............................................................. 11

## TABLE OF AUTHORITIES

Page No(s).

FEDERAL CASES

Atwater v. City of Lago Vista,
    532 U.S. 318 (2001) ...................................................................................8, 9

Branzburg v. Hayes,
    408 U.S. 665 (1972) ........................................................................................5

Butler v. Elle,
    281 F.3d 1014 (9th Cir. 2004) ......................................................................11

Case v. Kitsap County Sheriff's Department,
    249 F.3d 921 (9th Cir. 2001) .....................................................................7, 10

City of Los Angeles v. Heller,
    475 U.S. 796 (1986) ..................................................................................2, 11

Cox v. New Hampshire,
    312 U.S. 569 (1941) ........................................................................................6

Fuller v. M.G. Jewelry,
    950 F.2d 1437 (9th Cir. 1991) ...................................................................6, 10

Houchins v. KQED,
    438 U.S. 1 (1978) ............................................................................................5

Pearson v. Callahan,
    ___ U.S. ___; 129 S.Ct. 808 (2009) ...................................................2, 4, 5, 9

Quintanilla v. City of Downey,
    84 F.3d 353 (9th Cir. 1996) ...............................................................2, 3, 4, 11

Reynolds v. County of San Diego,
    84 F.3d 1162 (9th Cir. 1996) .....................................................................2, 11

Saucier v. Katz,
    533 U.S. 194 (2001) ........................................................................................4

Tatum v. City and County of San Francisco,
    441 F.3d 1090 (9th Cir. 2006) ........................................................................8

Virginia v. Moore,
    ___ U.S. ___; 128 S.Ct. 1598 (2008) .............................................................9

Whren v. United States,
    517 U.S. 806 (1996) ......................................................................................10

STATE CASES

Leiserson v. City of San Diego,
    184 Cal. App. 3d 41 (1986) ....................................................................7, 8, 10

Los Angeles Free Press Inc. v. City of Los Angeles,
    9 Cal. App. 3d 448 (1970) ...............................................................................5

FEDERAL RULES

Federal Rule of Civil Procedure 56 ........................................................................1

STATE STATUTES

California Civil Code section 52.1 ................................................................................1, 2, 5, 11
California Code of Civil Procedure section 52.1 ....................................................................12
California Vehicle Code section 22400(A)..........................................................................4,8, 9
California Vehicle Code section 2800(a) ...................................................................................9

1

## <u>NOTICE OF MOTION</u>

2 **TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

3     **PLEASE TAKE NOTICE** that on April 17, 2009, at 10:00 a.m., or as soon thereafter as

4 the matter may be heard in Courtroom 8 on the 19th floor of the above captioned court, located at

5 450 Golden Gate Avenue in San Francisco, Ca, defendant officers Kevin Reynolds and Cesar

6 Garcia will and hereby do move the Court for an order pursuant to Federal Rule of Civil Procedure

7 56, entering judgment on their behalf on the grounds that they are entitled to qualified immunity for

8 the claims against them in plaintiff's Complaint for Damages. The motion is made on the grounds

9 that there are no genuine issues of material fact, and the defendants are entitled to judgment as a

10 matter of law. More specifically, the motion is based on the following grounds:

11     1. As to plaintiff's First Amendment claims, plaintiff suffered no violation of his First

12         Amendment rights, and, even if he did, the officers could have reasonably believed that

13         plaintiff had no First Amendment right to remain at the scene of the accident under the

14         facts of this case.

15     2. As to plaintiff's Fourth Amendment claims, plaintiff suffered no violation of his Fourth

16         Amendment rights, and even if he did, the officers could have reasonably believed that

17         there was probable cause to detain plaintiff for violations of the California Vehicle

18         Code.

19     3. Because there was no underlying violation of his constitutional rights, there is no basis

20         for his claims arising under the ostensible authority of California Civil Code section

21         52.1.

22     4. Similarly, because there was no underlying violation of plaintiff's constitutional rights,

23         there can be no viable claim against the City of Oakland or Wayne Tucker in his official

24         capacity.

25     The motion is based on this notice and motion, the attached memorandum of points and

26 authorities, the accompanying declarations, the complete files of this case, and any argument or

27 evidence the court may entertain at the hearing of this matter.

28

DEFENDANTS' MOTION FOR SUMMARY     -1-            C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3        Plaintiff was detained and cited by police for violations of the California Vehicle Code after

4    he stopped his car in the number one lane of Interstate 880 in Oakland and got out in order to take

5    pictures, while standing in lanes of traffic on the freeway, of an overturned vehicle and a woman

6    lying in the road, who police believed at the time was the victim of a hit and run driver.

7        Plaintiff, who is a staff photographer for the Oakland Tribune, claims violations of his rights

8    under the First and Fourth Amendments to the U.S. Constitution.  As developed at length below,

9    the defendant officers are entitled to qualified immunity, and judgment must be entered on their

10   behalf according.   More specifically, they are entitled to qualified immunity because (1) the record

11   shows that plaintiff suffered no violation of his constitutional rights and (2) even if he had, the

12   officers could have reasonably believed they were acting in accordance with the law.  Pearson v.

13   Callahan, ___ U.S. ___; 129 S.Ct. 808, 815 (2009).  Furthermore, the officers cannot be liable for

14   plaintiff's claims brought under the ostensible authority of California Civil Code 52.1, nor can the

15   City of Oakland be liable, because plaintiff cannot show he suffered any violation of his underlying

16   constitutional rights, which are the only rights specified in his claims for relief.  Reynolds v.

17   County of San Diego, 84 F.3d 1162, 1170-1171 (9th Cir. 1996) (overruled on other grounds in Acri

18   v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997)); City of Los Angeles v. Heller, 475

19   U.S. 796, 799 (1986); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996).

20   **II.      STATEMENT OF FACTS**

21       On May 4, 2007, while on duty as a motorcycle officer for the Oakland Police Department,

22   defendant Oakland Police Officer Kevin Reynolds (Officer Reynolds) came upon a vehicle accident

23   on Interstate 880 in Oakland.  Declaration of Rachel Wagner (Wagner Dec.), Exhibit 1 at 15:23-

24   16:3; 18:1-11. Traffic was backed up; as he approached the scene, he observed an overturned

25   vehicle in the number 1 lane and a person lying on the ground.  Id., Exhibit 1 at 18:12-20:4.  Traffic

26   was stop and go, moving slowly around the site of the accident. Id., Exhibit 1 at 24:12-17; 26:14-

27   17.

28       Officer Reynolds parked his motorcycle straddling the number 1 and number 2 lanes and

DEFENDANTS' MOTION FOR  SUMMARY          -2-                          C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1    radioed for emergency medical assistance and for the CHP.  Wagner Dec., Exhibit 1 at 24:24-

2    26:21.  He spoke briefly with the victim about her medical condition. He also spoke with a witness

3    who told him that another vehicle had caused the accident and fled the scene.  Id., Exhibit 1 at

4    32:12-34:25; Exhibit 2 at p.3. Officer Reynolds' duty was not to investigate the accident, but to

5    maintain the scene and ensure everyone's safety until medical personnel and the CHP arrived on

6    the scene.  Id., Exhibit 1 at 40:16-41:1. Officer Reynolds believed that the site of the accident was a

7    crime scene: a felony hit and run. Id., Exhibit 1 at 116:11-13.

8         Officer Reynolds then observed plaintiff Chavez in the area of the Number 2 lane of the

9    interstate, taking photographs.  Wagner Dec., Exhibit 1 at 41:2-5. The officer asked if plaintiff had

10    seen the accident; he said he had not.  The officer then asked where his vehicle was.  Plaintiff

11    indicated that it was in the number 1 lane south of where the accident had occurred. Officer

12    Reynolds observed traffic merging around plaintiff's parked vehicle into the number 2 lane.  Id.,

13    Exhibit 1 at 42:7-43:24.

14         Officer Reynolds asked plaintiff to return to his car and to move it. Wagner Dec., Exhibit 1

15    at 49:24-50:1.  He viewed the parked car as a hazard because it could cause cars to back up behind

16    it so that, when the fire department and other emergency personnel would arrive, they too would be

17    stuck and have to merge into traffic to get around the car.  Id., Exhibit 1 at 50:10-54:12. He gave

18    plaintiff the option of moving the car further north to the 29th Avenue/Fruitvale exit where there

19    was a shoulder, and that he could continue to take his photographs from there.  Id., Exhibit 1 at

20    151:22-152:4; Exhibit 5 at 59:10-18.

21         Defendant Officer Cesar Garcia also arrived at the scene of the accident, and saw plaintiff

22    standing in the number 2 lane.  Wagner Dec., Exhibit 5 at 17:25-18:6; 35:6-36:6. He considered

23    Chavez' presence in the lanes of traffic to be a hazard, and told him that he would have to leave.

24    Officer Garcia then continued to assist other cars that had stopped so that they could leave the

25    scene.  Id., Exhibit 5 at 46:3-47:2.

26         Although he had said he would do so, plaintiff did not return to his car.  Wagner Dec,

27    Exhibit 4, 66:25-71:15. Both Officer Garcia and Officer Reynolds observed him in an area adjacent

28    to the number 2 and 3 lanes of the freeway after Officer Reynolds had told him to leave.  Id.,

DEFENDANTS' MOTION FOR  SUMMARY           -3-                    C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Exhibit 1 at 56:22-61:23; Exhibit 5 at 52:8-13; 56:18-58:20.   When told once again that he had to

2   leave, plaintiff told Officer Reynolds that he (plaintiff) had a right to be on the scene. <u>Id.</u>,  Exhibit

3   1 at 54:22-61:23; Exhibit 4 at 89:11-90:5; Exhibit 5 at 87:15-17. Officer Reynolds heard drivers

4   honking their horns at plaintiff, and traffic was swerving around him. <u>Id.</u>, Exhibit 1 at 147:20-23;

5   58:8-11. While he was talking with plaintiff, Officer Reynolds also heard sirens and saw an

6   Oakland Fire Department rig approaching the scene.  Because plaintiff's car was parked in the

7   number 1 lane, the emergency vehicle had to maneuver around the car in order to reach the scene of

8   the accident. <u>Id.</u>, Exhibit 1 at 58:3-6; 71:21-72:4.  Additionally, his presence was a distraction to

9   the officers who were dealing with the accident and crime scene. Wagner Dec., Exhibit 5 at 74:14-

10   22; 76:6-18; 77:9-78:2.

11        After plaintiff did not leave the scene, even though Officer Reynolds asked him three times

12   to do so and told him that the accident was a crime scene (Wagner Dec., Exhibit 4 at 74:1-16; 89:5-

13   90:24), and emergency vehicles were impeded from approaching the scene because of plaintiff's

14   car, Officer Reynolds  decided to detain plaintiff.  He placed plaintiff in handcuffs and led him to

15   the median. <u>Id.</u>, Exhibit 1 at 72:5-18; Exhibit 5 at 82:4-8.  Officer Reynolds decided to detain

16   plaintiff because he believed that by failing to move his car as ordered, his presence and the

17   presence of his vehicle posed a hazard. <u>Id.</u>, Exhibit 1 at 65:24-3; 102:10-103:20.  In addition, he

18   was concerned with preserving the integrity of the site as a crime scene. <u>Id.</u>, Exhibit 1 at 129:4-23.

19   He issued a citation to plaintiff for violations of California Vehicle Code sections 22400(A) and

20   2800(a). <u>Id.</u>, Exhibit 3.  The officer removed the handcuffs; Mr. Chavez signed the citation and left

21   the scene. <u>Id.</u>, Exhibit 5 at 67:15-20.

22

23                **III.   LEGAL ARGUMENT**

24   **A.**    **The Defendant Officers are entitled to qualified immunity for Plaintiff's first
amendment claims.**

25        The doctrine of qualified immunity "protects government officials from liability for civil

26   damages insofar as their conduct does not violate clearly established statutory or constitutional

27   rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, ___ U.S. ___; 129

28   S.Ct. at 815 (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 808, 818 (1982)).  In <u>Pearson</u>, the U.S. Supreme

DEFENDANTS' MOTION FOR  SUMMARY     -4-                   C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Court re-calibrated the "order of battle" for establishing a claim of qualified immunity, retreating

2   from the rigid formula announced in <u>Saucier v. Katz</u>, 533 U.S. 194,  which required (in this order)

3   examination of whether the conduct violated a constitutional right, and, if so, whether the right was

4   clearly established.  In <u>Pearson</u> the court concluded that the <u>Saucier</u> inquiry may be "beneficial" but

5   is not mandatory.  <u>Id</u>. at 818.

6          The two-prong inquiry is "beneficial" here because the clear absence of any constitutional

7   violation amplifies the reasonableness of the officers' belief that their conduct was lawful.  <u>See id.</u>

8   at 815 (qualified immunity serves the interest of "the need to shield officials from harassment,

9   distraction and liability when they perform their duties reasonably.")  In addition, because a two-

10  prong qualified immunity inquiry demonstrates no constitutional violation, it serves to dispose of

11  plaintiff's claims against the City of Oakland, and his state law claim under California Civil Code

12  section 52.1 as well, since those causes of action are based on alleged violations of his rights under

13  the First and Fourth Amendments.

14         Turning to the claims themselves, plaintiff's First Amendment cause of action rests on

15  nothing more than the proposition that, because he is a member of press, he had a First Amendment

16  right of access to the accident scene, and his detention and citation interfered with that right. As

17  explained below, the defendant officers are entitled to qualified immunity because: (1) there is in

18  fact no First Amendment right implicated here and (2) even if there was, the officers could have

19  reasonably believed that they were acting lawfully.

20         **1.      Plaintiff had no First Amendment right of access to the accident scene.**

21         Plaintiff's conduct here falls outside the First Amendment.   Members of the press enjoy no

22  First Amendment right of access to the scenes of crimes and accidents superior to that of the

23  general public. <u>Branzburg v. Hayes</u>, 408 U.S. 665, 684-685 (1972); <u>Houchins v. KQED</u>, 438 U.S.

24  1, 10-11 (1978); <u>see also</u> <u>Los Angeles Free Press Inc. v. City of Los Angeles</u>, 9 Cal. App. 3d 448,

25  455 (1970) and federal authorities cited therein.

26         Plaintiff cannot seriously contend that a member of the general public could, without

27  repercussions, simply stop and exit his or her car on an interstate at the site of an accident and

28  possible crime scene under any circumstances, let alone wander in the lanes of traffic in order to

DEFENDANTS' MOTION FOR  SUMMARY          -5-          C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1    take pictures of the car and the victim.  Nor can he seriously contend that public officials do not

2    have the countervailing right, indeed the obligation, to ensure the safe use of the public highways.

3    The U.S. Supreme Court affirms this truism:

4

5          Civil liberties, as guaranteed by the Constitution, imply the existence of an
           organized society maintaining public order without which liberty itself would be lost
6          in the excesses of unrestrained abuses. The authority of a municipality to impose
           regulations in order to assure the safety and convenience of the people in the use of
7          public highways has never been regarded as inconsistent with civil liberties but
           rather as one of the means of safeguarding the good order upon which they
8          ultimately depend. The control of travel on the streets of cities is the most familiar
           illustration of this recognition of social need. Where a restriction of the use of
9          highways in that relation is designed to promote the public convenience in the
           interest of all, it cannot be disregarded by the attempted exercise of some civil right
10         which in other circumstances would be entitled to protection. One would not be
           justified in ignoring the familiar red traffic light because he thought it his religious
11         duty to disobey the municipal command or sought by that means to direct public
           attention to an announcement of his opinions.

12

13   Cox v. New Hampshire, 312 U.S. 569, 574 (1941)

14         These authorities dispose of plaintiff's First Amendment claims.  There is no First

15   Amendment right to stop and exit one's vehicle on the freeway, particularly where, as here, to do so

16   might, and in fact did, hamper access by emergency vehicles to a serious accident and crime scene.

17   In that regard, it bears repeating that plaintiff's detention and citation were based on violations of

18   sections 22400(A) and 2800 (a) of the Vehicle Code, respectively, impeding traffic and failure to

19   obey a lawful order under the Vehicle Code.  These are laws clearly directed at "the safety and

20   convenience of the people in the use of the public highways."  Their enforcement here is not

21   "inconsistent" with plaintiff's civil liberties, but rather an incontrovertible exercise of the City's

22   obligation to safeguard the public order and promote the public convenience "in the interest of all."

23   There is simply no First Amendment violation under these facts.

24         **2.      The Officers could have reasonably believed that their conduct here was
                    in conformity with federal law.**

25         Even if there could be a viable First Amendment claim, which there is not, the officers are

26   nonetheless entitled to qualified immunity because they could have reasonably believed their

27   conduct lawful.  Fuller v. M.G. Jewelry, 950 F.2d 1437, 1443 (9th Cir. 1991) (citing Anderson v.

28   Creighton, 483 U.S. 635, 641 (1987)). As noted several times, it is undisputed that plaintiff stopped

1 and exited his vehicle in the number one lane of Interstate 880.  The record shows further that

2 plaintiff remained standing in lanes of traffic on the freeway even after being ordered <u>three times</u> to

3 return to his car and move it.  It is also undisputed that an Oakland Fire Department emergency

4 vehicle had to negotiate around plaintiff's stopped and driverless vehicle.  Finally, it is undisputed

5 that at the time of his interaction with plaintiff, both Officer Reynolds and Officer Garcia believed

6 the accident was a felony hit and run, and informed plaintiff of that it was a crime scene.

7       Given these facts, both Officer Reynolds and Officer Garcia could have reasonably believed

8 that their conduct was consistent with plaintiff's First Amendment rights.   As noted above, both

9 state and federal courts have concluded that the press does <u>not</u> have an unfettered right of access to

10 crime scenes, or, it would appear, access where their presence could interfere with public safety.

11 The officers could thus have reasonably concluded that the First Amendment did not require them

12 to let plaintiff, who claims such an unfettered right of access to a crime scene, and whose vehicle

13 and personal presence interfered with emergency medical providers and distracted the officers,

14 roam the scene at will. The officers' response was manifestly reasonable, and they are entitled to

15 qualified immunity accordingly.

16       **3.**     **The Officers' conduct was in conformity with state law.**

17       Plaintiff's complaint also points to state laws and OPD procedures that supposedly allowed

18 him a right of access.  Regardless of whether those laws (1) support his position and (2) were

19 violated, the officers' compliance (or lack thereof) with state law or departmental regulations has

20 no bearing on whether they could have believed their conduct was consistent with <u>federal</u> law.

21 <u>Case v. Kitsap County Sheriff's Department</u>, 249 F.3d 921, 929 (9th Cir. 2001).   On this record, the

22 officers could have reasonably believed they were acting in compliance with federal law, and they

23 are entitled to qualified immunity on plaintiff's First Amendment claims.

24       However, even under state law, the record shows that the officer's actions were lawful or, at

25 the very least, they could have reasonably believed that they were.

26       Under California law, members of the press are afforded access to such things as disaster

27 sites.  <u>Leiserson v. City of San Diego</u>, 184 Cal. App. 3d 41, 50-51 (1986). However, they may be

28 excluded where their presence will interfere with emergency operations.  <u>Id.</u> at 51. The record here

1   shows that plaintiff's abandoned car did just that.  Directing him to remove his car was not a

2   limitation on his role as a member of the press, but rather an order to prevent interference with

3   access by emergency personnel.

4         And while the press may be entitled to limited access to disaster scenes, it enjoys no special

5   right of access to crime scenes at all.  Under California law, "such scenes have traditionally been

6   subject to exclusion orders which apply to the press as well as the general public."  Leiserson v.

7   City of San Diego, 184 Cal. App. 3d at 52.  It is once again beyond dispute that both officers

8   believed that the accident site was in fact a crime scene, specifically the site of a felony hit and run.

9   Here as well, California law expressly allowed for plaintiff to be excluded in the same manner that

10  the general public can be excluded.  Id.  In that regard, a member of the general public obviously

11  has no right to leave his or her car in the fast lane of the freeway, wander between lanes of traffic

12  and interfere with emergency vehicles and vehicular traffic.  Even if state law were an element of

13  the qualified immunity analysis, there was no violation of state law here.

14

15  **B.      The Defendant Officers Are Entitled To Qualified Immunity For Plaintiff's
          Fourth Amendment Claims.**

16        Plaintiff also seeks recovery for purported violations of his Fourth Amendment rights, based

17  on the assertion that he was detained without probable cause.  Here again the officers are entitled to

18  qualified immunity because (1) the undisputed facts show that there was in fact probable cause to

19  detain plaintiff on the Vehicle Code violations for which he was cited and (2) the officers could

20  have reasonably believed that their conduct was consistent with the Fourth Amendment.

21

22        **1.      There was probable cause to detain Plaintiff for violations of California
                Vehicle Code Sections 22400(A) And 2800(a).**

23        An officer has probable cause to arrest an individual without a warrant "if the available facts

24  suggest a fair probability that the suspect has committed a crime."  Tatum v. City and County of

25  San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006).  An officer who observes criminal conduct may

26  arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty.  Id.

27  (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause

28  to believe that an individual has committed even a very minor criminal offense in his presence, he

DEFENDANTS' MOTION FOR SUMMARY          -8-                              C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1    may, without violating the Fourth Amendment, arrest the offender.")

2        As explained below, there was without question probable cause to arrest plaintiff on the

3    Vehicle Code charges for which he was cited, and his Fourth Amendment claims fail accordingly.

4

5        **a.    The record shows that Plaintiff was in violation of Vehicle Code section 22400(A).**

6        Section 22400(A) of the California Vehicle Code provides, in pertinent part that "No person

7    shall bring a vehicle to a complete stop upon a highway so as to impede or block the normal and

8    reasonable movement of traffic unless the stop is necessary for safe operation and in compliance

9    with the law."

10       Here, by plaintiff's own admission, he stopped his car on the freeway, and then got out to

11   take photographs.  It is undisputed that because he had exited his car an OFD emergency vehicle

12   was impeded from approaching the scene.  It also seems self evident that a driverless vehicle

13   stopped in the Number 1 lane of a freeway would necessarily "block the normal and reasonable

14   movement of traffic"—indeed, both officers observed exactly that.   This is so even if traffic is

15   slowing at the scene of an accident; safety and access, not to mention common sense, require that

16   traffic keep moving, albeit at a slower speed.

17       The record thus establishes beyond dispute that there was probable cause to charge plaintiff

18   with a violation Vehicle Code section 22400(A).[1]

19

20       **b.    Plaintiff failed to obey a lawful order to move his vehicle, thus establishing a violation of Vehicle Code section 2800(a).**

21       California Vehicle Code section 2800(a) makes it unlawful to "willfully fail or refuse to

22   comply with a lawful order, signal, or direction of a peace officer when that peace officer is in

23   uniform and performing duties pursuant to any provision of this code."

24       It is undisputed that the officers told plaintiff to move his car a minimum of three times.

25   Even after Officer Reynolds ordered plaintiff to return to his car and to move it, plaintiff, again by

26

27   _____

[1] Plaintiffs' complaint only alleges lack of probable cause.  It does not allege that plaintiff could not be detained because of the nature of the charge itself, nor could he consistent with Supreme Court authority.  See Atwater v. City of Lago Vista, 532 U.S. at 351; Virginia v. Moore, ___ U.S.

28   ___; 128 S.Ct. 1598, 1604-1607 (2008).

DEFENDANTS' MOTION FOR  SUMMARY            -9-                               C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1    his own admission, did not proceed directly to his car in compliance with the officer's order.

2    According to the officers, not only did he not return to his car, he was moving around in the vicinity

3    of the number 2 and 3 lanes of the interstate with drivers honking their horns and swerving around

4    him.  Here too then, the record discloses all the requisite elements of the offense, which was

5    committed in the presence of the officer.  There was thus without question also probable cause to

6    arrest the plaintiff on the section 2800(a) charge.

7

8                 2.        **The Officers could have reasonably believed their conduct was
                           consistent with the Fourth Amendment.**

9            Plaintiff has thus far not suggested that he was <u>not</u> in violation of the vehicle code.   He has

10   only intimated that state law and departmental procedures separately allowed him to be present at

11   the accident scene.  Those contentions do not undermine the officers' entitlement to qualified

12   immunity.

13           As noted above, compliance with state law or departmental regulations is immaterial to the

14   question of whether a police officer could believe his or her conduct reasonable under the Fourth

15   Amendment ( <u>Case v. Kitsap County</u>, 249 F. 3d at 929), nor does state law provide the measure of

16   reasonableness for Fourth Amendment purposes.  <u>Virginia v. Moore</u>, 128 S.Ct. at 1604-1607.   And

17   as also explained above, even under California law, the officers could properly require plaintiff to

18   move his car notwithstanding his role as a member of the press because the accident was a crime

19   scene, or at the very least, the officers reasonably believed that it was.  <u>Leiserson v. City of San</u>

20   <u>Diego</u>, 184 Cal. App. 3d at 52.

21           Finally, plaintiff may attempt to argue that the arrest was unlawful because the officers did

22   not want him to take pictures of the injured woman. The officers' subjective opinion, however, is

23   irrelevant to the question of probable cause to arrest, which, as demonstrated above, was clearly

24   present here.  <u>See e.g.</u> <u>Whren v. United States</u>, 517 U.S. 806, 811-813 (1996).

25           Under these facts—a vehicle parked on the freeway in a manner that impeded access of

26   emergency vehicles, with the driver wandering in lanes of traffic, who failed to return to and move

27   his car after being asked to do so three times--the officers could have reasonably believed that he

28   was in violation of provisions of the California Vehicle Code that prohibit precisely that conduct.

1    Both officers are entitled to qualified immunity accordingly.  Fuller v. M.G. Jewelry, 950 F.2d at

2    1443-1445.

3    **C.    The absence of a constitutional injury requires dismissal of Plaintiffs' claim
         under California Civil Code Section 52.1.**

4

5         Plaintiffs' Fourth Cause of Action seeks recovery under California Civil Code section 52.1.

6    That provision allows a civil action for damages for interference with the exercise or enjoyment of

7    rights "secured by the Constitution or laws of the United States, or by the Constitution or laws of

8    this state."  The only underlying rights plaintiff explicitly claims were violated are those arising

9    under the First and Fourth Amendments. As demonstrated above in the qualified immunity

10   analysis, however, plaintiff has suffered no deprivation of those rights.  In the absence of any such

11   deprivation, there is no viable basis for his section 52.1 claim either, and the individual defendants

12   are entitled to judgment on those claims as well.  Reynolds v. County of San Diego, 84 F.3d at

13   1170-1171. [2]

14   **D.    There can be no viable claim against the City insofar as he suffered no
         constitutional injury at the hands of the individual Officers.**

15        Plaintiff also names the City of Oakland and Chief Wayne Tucker, in both his official and

16   individual capacity, as defendants.  As is the case with plaintiff's claims under Cal. Civil Code

17   section 52.1, because the qualified immunity analysis establishes that plaintiff suffered no

18   constitutional injury at the hands of the individual officers, the claims against the City and Chief

19   Tucker in his official capacity[3]  must fall as well.  City of Los Angeles v. Heller, 475 U.S. 796, 799

20   (1986); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996).

21                           **IV.    CONCLUSION**

22        The record establishes that plaintiff suffered no constitutional injury when he was cited and

23

24        [2] As noted above, plaintiff lists provisions of state law and OPD procedures, but does not
25   expressly base his claims for relief on those laws.  In any event, as also explained above, the
     officers did not violate state law either.

26        [3] To the extent that plaintiff sues Chief Tucker in his official capacity, his suit is really against
     the municipality.  See Butler v. Elle, 281 F.3d 1014, 1026 fn 9 (9th Cir. 2004). The City notes that
27   there are no allegations that Chief Tucker had any personal involvement with the conduct at issue
     here other than failing to provide the officers with adequate training, supervision, discipline, and
28   control.

DEFENDANTS' MOTION FOR SUMMARY            -11-                                    C08-04015
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY; NOTICE OF MOTION;
MEMORANDUM OF POINTS AND AUTHORITIES

1 released after he left his car in the fast lane of the freeway at the scene of a possible hit and run

2 accident.  Even if his constitutional rights were implicated under these facts, the defendant officers

3 could have reasonably believed that their own conduct was in conformity with the law.  For these and

4 all the foregoing reasons, the officers are entitled to qualified immunity and must be dismissed as

5 individual defendants.  And because the record shows no constitutional injury, there is no viable claim

6 either against the City of Oakland, or against the defendants under California Code of Civil Procedure

7 section 52.1.

8 Dated: March 20, 2009

9                         JOHN A. RUSSO, City Attorney

10                         RANDOLPH W. HALL, Chief Assistant City Attorney
                        RACHEL WAGNER, Supervising Trial Attorney

11                         CHRISTOPHER KEE, Deputy City Attorney

12                   By: /s/Christopher Kee
                        Attorneys for Defendants,

13                         CITY OF OAKLAND, et al.