1  Terry Gross (103878)
   Adam C. Belsky (147800)
2  Monique Alonso (127078)
   GROSS BELSKY ALONSO LLP
3  180 Montgomery Street, Suite 2200
   San Francisco, California 94104
4  Telephone: (415) 544-0200
   Facsimile:  (415) 544-0201
5
   Attorneys for Plaintiff
6  RAYMUNDO CHAVEZ

7

8                  **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10                      **OAKLAND DIVISION**

11
   RAYMUNDO CHAVEZ,                    ) Case No. 3:08-cv-04015-CRB
12                                     )
              Plaintiff,              ) **PLAINTIFF'S OPPOSITION**
13                                     ) **TO DEFENDANT OFFICERS**
          v.                          ) **KEVIN REYNOLDS AND CESAR**
14                                     ) **GARCIA'S MOTION FOR SUMMARY**
   CITY OF OAKLAND, CHIEF WAYNE G.    ) **JUDGMENT ON THE GROUNDS**
15 TUCKER, OFFICER K. REYNOLDS,       ) **OF QUALIFIED IMMUNITY**
   OFFICER CESAR GARCIA, and DOES 1-  )
16 20, inclusive,                     ) Date:   May 8, 2009
                                      ) Time:   10:00 a.m.
17            Defendants.             ) Place:  Courtroom 8, 19th Floor
                                      )
18 _____   )

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7        I.      DISPUTED ISSUES OF MATERIAL FACT PRECLUDE SUMMARY
                 JUDGMENT ON QUALIFIED IMMUNITY GROUNDS  . . . . . . . . . . . . . . . . . 6
8
                 A.    Disputed Issues of Material Fact Preclude Summary Judgment on
9                            Defendants' Contention That No Constitutional Violation Occurred . . . . . 6

10                       1.     Disputed issues of material fact exist as to whether the Officers
                                violated plaintiff's fourth amendment rights by arresting him
11                              without probable cause  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12                              a.    The record shows disputed issues of fact as to whether
                                      there was any violation of Vehicle Code § 22400(a) . . . . . . 7
13
                                b.    The record shows disputed issues of fact as to whether
14                                    there was any violation of Vehicle Code § 2800(a) . . . . . . . 8

15                       2.     Disputed issues of material fact exist as to whether the
                                Officers violated plaintiff's First Amendment right to
16                              photograph and gather news concerning police conduct . . . . . . . . . 9

17                       3.     Even if defendants had probable cause to arrest plaintiff for
                                Vehicle Code violations, there are disputed issues of fact as
18                              to whether defendants retaliated against plaintiff in violation
                                of the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
19
                 B.    Disputed Issues of Material Fact Concerning the Actions Taken by
20                           Plaintiff and the Officers Preclude Summary Judgment on Defendants'
                             Contention That Their Violation of Plaintiff's Constitutional Rights
21                           Was Objectively Reasonable Under the Circumstances  . . . . . . . . . . . . . . 11

22       II.     SUMMARY JUDGMENT IS IMPROPER ON PLAINTIFF'S STATE
                 LAW CLAIM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
23

24       III.    SUMMARY JUDGMENT CANNOT BE GRANTED FOR THE CITY
                 OR THE CHIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
26

27

28

1

## TABLE OF AUTHORITIES

2

<u>**Cases**</u>                                                                                                                           <u>**Page**</u>

3

<u>**Federal**</u>

4       *Acri v. Varian Assoc., Inc.*,
            114 F.3d 999 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
5
        *Anderson v. Liberty Lobby, Inc.*,
6           477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
7       *Beck v. City of Upland*,
            527 F.3d 853 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12
8
        *Branzburg v. Hayes*,
9           408 U.S. 665 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
10      *Channel 10, Inc. v. Gunnarson*,
            337 F. Supp. 634 (D. Minn. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
11
        *Collins v. Jordan*,
12          110 F.3d 1363 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
13      *Connell v Town of Hudson*,
            733 F. Supp. 465 (D.N.H. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
14
        *Coszalter v. City of Salem*,
15          320 F.3d 968 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
16      *Daily Herald Co. v. Munro*,
            838 F.2d 380 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17
        *Edgerly v. City and County of San Francisco*,
18          495 F.3d 645 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
19      *Freeman v. Arpaio*,
            125 F.3d 732 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
20
        *Hallstrom v. City of Garden City*,
21          991 F.2d 1473, 1482 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
22      *Liston v. County of Riverside*,
            120 F.3d 965 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
23
        *Mendocino Environmental Center v. Mendocino County*,
24          192 F.3d 1283 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
25      *Michigan v. Summers*,
            452 U.S. 692 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
26
        *Reynolds v. County of San Diego*,
27          84 F.3d 1162 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28

*Saucier v. Katz,*
        533 U.S. 194 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Skoog v. County of Clackamas,*
        469 F.3d 1221 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Smith v. City of Cumming,*
        212 F.3d 1332 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Torres v. City of Los Angeles,*
        548 F.3d 1197 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**State**

*Lieberman v. KCOP Television, Inc.,*
        110 Cal. App. 4th 156 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Leiserson v. City of San Diego,*
        184 Cal. App. 3d 41 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Marin Independent Journal v. Municipal Court,*
        12 Cal.App.4th 1712 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Wilson v. Superior Court,*
        13 Cal.3d 652 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Statutes and Constitutional Provisions**

**Federal**

Federal Rule of Civil Procedure
        Rule 30(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States Code
        Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

**State**

California Civil Code
        Section 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

California Constitution
        Article I, Section 2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

California Penal Code
        Section 409.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

California Vehicle Code
        Section 22400(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
        Section 2800(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

1

## INTRODUCTION

2      It is a basic principle that a motion for summary judgment must be based on undisputed facts

3   and must be denied if the non-moving party demonstrates a triable issue of material fact. Here,

4   defendants' motion is premised on a one-sided view of the factual record, and for virtually every

5   critical fact, there are significant disputes.

6      The motion by Defendants Officers Kevin Reynolds and Cesar Garcia ("defendants') is

7   premised on the assertions: (1) that defendants repeatedly told plaintiff to leave the scene; (2) that

8   plaintiff failed to obey this order; (3) that plaintiff himself was standing in traffic lanes causing traffic

9   to swerve around him; and (4) that plaintiff's car impeded the access of emergency vehicles to the

10  scene.

11     Defendants fail to advise the Court that plaintiff testified in his deposition that: (1) Officer

12  Reynolds only gave instructions to plaintiff to leave the scene during one short conversation;

13  (2) plaintiff immediately complied with this instruction and started walking to his car; (3) before

14  plaintiff could get to his car, Officer Reynolds again confronted plaintiff and would not permit him

15  to continue going to his car, requiring plaintiff to wait while Officer Reynolds gave him a citation;

16  (4) while Officer Reynolds was writing the citation, a newsworthy event occurred – the first California

17  Highway Patrol car was arriving on the scene, despite the fact that almost half an hour had passed –

18  and plaintiff raised his camera to take the picture; (5) at that point Officer Reynolds then told plaintiff,

19  "That's it, you're under arrest, you don't need to take these kind of pictures," and then arrested and

20  handcuffed plaintiff; (6) plaintiff never was standing in any lanes of traffic; and (7) plaintiff's car did

21  not impede the access of emergency vehicles to the scene. Documentary photographic evidence

22  supports that plaintiff was complying with the order to leave, as it shows that only a very short time

23  passed between Officer Reynolds's instruction to leave and when Reynolds started writing a citation

24  to plaintiff.

25     Thus, there is evidence that defendants arrested plaintiff not for the presence of his vehicle at

26  the scene (defendants were writing him a citation for that), but only decided to arrest him when he took

27  a photograph they did not want to take, to prevent plaintiff from reporting on slow police response

28  time.

1    This evidence precludes summary judgment on any causes of action, as it shows disputed issues

2    of fact on whether plaintiff was in violation of any Vehicle Code provision or police order, whether

3    plaintiff was provided an opportunity to comply with a police order, whether defendants arrested

4    plaintiff in retaliation for plaintiff's exercise of First Amendment rights, and whether the constitutional

5    rights interfered with were clearly established.

6                                   **STATEMENT OF FACTS**

7        Plaintiff is a Staff Photographer for the Oakland Tribune, who has won many local, state and

8    national awards for his photojournalism.  Declaration of Terry Gross ("Gross Dec."), submitted

9    concurrently, Ex. A at 15:24-16:24, 153:24-155:22; Declaration of Raymundo Chavez ("Chavez

10   Dec."), submitted concurrently, ¶ 2.

11       On May 4, 2007, plaintiff was driving on northbound 880 in lane number 1, when traffic in all

12   four lanes of the freeway stopped suddenly and completely. Ex. A at 54:2-22.[1/] Plaintiff observed one

13   car stopped in front of him, and then an overturned car, and a woman on the ground. *Id.,* Ex A at 57:6-

14   23, 85:11-86:4.  As traffic was stopped and not moving, plaintiff had no choice but to stop his vehicle.

15   Chavez Dec. ¶ 3.   Plaintiff left his vehicle to approach the scene.  Ex. A at 62:2-9.   The overturned

16   vehicle was blocking lane 1 and lane 2.  Gross Dec., Ex. B at 24:4 (Reynolds Dep.).  From the time

17   that plaintiff arrived at the scene until he was arrested by defendants, no traffic was moving in either

18   lane number 1 or lane number 2.  Chavez Dec. ¶ 4.

19       More than six other vehicles stopped on the freeway, and their occupants got out of their cars;

20   these cars were parked on the freeway in lane number 1, both before and after the overturned car.

21   Chavez Dec. ¶ 5.

22       Plaintiff saw that the injured woman was being assisted by other individuals who had exited

23   from their cars on the freeway.  Plaintiff began taking photographs of the accident scene for the

24   Oakland Tribune. Ex A at 61:18-62:11; Chavez Dec. ¶ 6. Plaintiff wore on a lanyard around his neck,

25   in plain view, the most current press identification card issued by the Oakland Police Department.  Ex.

26   A at 78:1-79:8.   In addition, plaintiff placed a press parking pass issued by the Oakland Police

27   Department on the windshield of his car (*id.* at 77:12-25), and this was in plain view and visible to

28   _____

[1/]        All references to "Exhibit A" are to Exhibit A to the Declaration of Terry Gross, which contain
relevant pages from plaintiff's deposition.

1   anyone who approached his vehicle.  Chavez Dec. ¶ 6.

2           Plaintiff had been at the scene approximately 15 minutes before he observed Officer Reynolds

3   of the Oakland Police Department at the scene.  Ex. A at 86:20-87:2.  A few minutes later, Officer

4   Reynolds approached plaintiff, and had a conversation with him.  Officer Reynolds asked if plaintiff

5   had witnessed the accident, and plaintiff said no, I'm press, I'm from the Oakland Tribune.  Reynolds

6   asked where plaintiff's car was, and plaintiff pointed to his car.  Reynolds told plaintiff to go to his car

7   and leave.  Plaintiff then stated that as a member of the media he had a right to cover accident scenes.

8   Reynolds responded that he didn't care, plaintiff was to go back to his car and leave because he didn't

9   "need to take these kind of pictures."  *Id.* at 87:3-24; Chavez Dec. ¶ 7.  Plaintiff reiterated that

10  members of the media had the right to be at an accident scene.  Reynolds then stated that it was a crime

11  scene, and instructed plaintiff to return to his car and leave.  Plaintiff then said okay, and started

12  walking to his car to leave.[2/]  Ex. A at 89:11-90:8; Chavez Dec. ¶ 7.  The entire conversation lasted

13  a minute or two.  Chavez Dec. ¶ 7.[3/]

14          As plaintiff was walking to his car to leave in accordance with Reynolds' instruction, plaintiff

15  heard an ambulance arriving at the scene behind him (traveling in the southbound lanes of 880, on the

16  other side of the median), and he turned to look.  At that moment, Reynolds approached and started

17  yelling at plaintiff, told plaintiff he was going to issue him a citation, grabbed plaintiff's press

18  credential and demanded plaintiff's driver's license and proof of insurance.  Ex. A at 95:7-98:4.

19  Reynolds did not tell plaintiff to leave during this second conversation, and plaintiff did not state that

20  he would not leave nor did he refuse to leave; plaintiff cooperated with Reynolds' request for his

21  license and proof of insurance.  Ex. A at 97:22-98:18.  During this second conversation, neither

22

23  [2/]      Defendants cite plaintiff's deposition at 66:25-71:15 for the proposition that "[a]lthough he had said
24  he would do so, plaintiff did not return to his car."  Def. Mem. at 3.  There is no support for this assertion
    at these pages, or anywhere, in plaintiff's deposition.  Rather, these pages show that plaintiff testified "I
    didn't have the chance" to get in his car.  Ex. A at 71:11-21.

25  [3/]      Defendants repeatedly contend in their opening memorandum that Reynolds asked plaintiff three
26  times to leave the scene.  Def. Mem. at 4, 7, 9, 10.  However, defendants ignore plaintiff's testimony that the
    three statements by Reynolds all occurred during this one short conversation lasting only one to two minutes,
27  and were not three separate instructions.  Ex. A at 87:3-24,89:11-90:5, 80:16-20, 74:1-3; Chavez Dec. ¶ 7.
    Also, several pages of plaintiff's deposition transcript cited and submitted by defendants were corrected by
28  plaintiff in accordance with Fed. R. Civ. P. 30(e), and it is the corrected pages that should be considered.
    *See* Ex. A at 68, 74.

1  Reynolds nor Garcia gave plaintiff an opportunity to leave before they wrote the citation.  Ex. A at
2  106:23-107:4.

3      Reynolds asked for plaintiff's vehicle registration, which was in his car.  Chavez Dec. ¶ 9.
4  Plaintiff then started walking to his car to get his registration, when he heard the first California
5  Highway Patrol vehicle approaching the scene.  Ex. A at 107:18-23.  This was almost 30 minutes after
6  the accident occurred; the CHP vehicle was approaching on southbound 880 on the other side of the
7  median, with its lights flashing.  Plaintiff believed this late arrival was newsworthy, as it showed a
8  slow response time by the CHP.  Chavez Dec. ¶ 9.  While plaintiff was walking to his car, he raised
9  his camera to take a picture of the arriving CHP vehicle.  Ex. A at 107:18-108:21.  At that moment,
10 Reynolds stood in front of plaintiff, grabbed his camera, and said, "that's it, you're under arrest, you
11 don't need to take these kinds of pictures," and Reynolds and Garcia then grabbed plaintiff's arms and
12 handcuffed his arms behind his back.  Ex. A at 117:19-119:25.  Reynolds and Garcia then had plaintiff
13 sit on the highway with his hands handcuffed behind his back, and plaintiff stayed there handcuffed
14 for about 30 minutes.  Ex. A at 120:9-15, 122:16-21.  When Reynolds and Garcia released plaintiff
15 from the handcuffs, Reynolds said, don't ever come here again and take these kind of pictures. Ex. A
16 at 128:2-5.

17     Defendants' contention that plaintiff did not obey Reynolds' instruction to leave the scene is
18 undercut by the documentary evidence: the record of the digital photographs that plaintiff took, along
19 with the time-stamps of each photograph.  The photographs demonstrate that after plaintiff's first
20 conversation with Reynolds in which Reynolds instructed plaintiff to leave, plaintiff took no further
21 photographs of the accident, and the timestamps on the photographs show that the second conversation
22 with Reynolds (in which Reynolds informed plaintiff that he was going to give him a citation) took
23 place only two minutes later (and during which time period plaintiff had a one to two minute
24 conversation with Reynolds).  Chavez Dec. ¶ 13 and Exs. A and B.  These photographs and time
25 stamps refute defendants' testimony that plaintiff disobeyed Reynolds' instruction to leave, and
26 demonstrate that plaintiff stopped taking photographs of the accident once Reynolds told him to stop

27

28

1    taking photographs and to leave.[4/]

2         The documentary photographic evidence also undercuts defendants' contention that Reynolds

3    arrested plaintiff for not moving his car (Def. Mem. at 4).  The timestamps of the photographs show

4    that four minutes after Reynolds looked at plaintiff's press credential, plaintiff took one photograph

5    of a CHP vehicle approaching, and then the next photograph is blocked, corroborating plaintiff's

6    testimony that Reynolds at first decided to give plaintiff a citation, and that it was only after plaintiff

7    took a photograph of the CHP vehicle that Reynolds decided to arrest and detain plaintiff.  *See* Chavez

8    Dec. ¶ 14 & Ex. B.

9         During the time when plaintiff was at the accident scene, more than six other vehicles were

10   stopped and individuals had gotten out of their cars.  At the time that Reynolds and Garcia arrested

11   plaintiff, plaintiff observed at least one vehicle stopped at the scene with its driver out of the car.

12   Plaintiff did not observe Reynolds or Garcia instructing those drivers to leave, nor issuing a citation

13   to those drivers.  Chavez Dec. ¶ 10.

14        Contrary to defendants' assertion that it was undisputed that plaintiff was standing in lanes 2

15   and 3 with moving traffic and "wandering in lanes of traffic" (Def. Mem. at 3, 10), plaintiff testified

16   that he never was in lanes 2 or 3, and never blocked moving traffic.  Ex. A at 64:21-25; Chavez Dec.

17   ¶ 11.  There also was testimony that plaintiff's vehicle did not block any access of emergency vehicles

18   to the scene.  Traffic in lanes numbers 1 and 2 always was blocked by the overturned car.  Gross Dec.,

19   Ex. B at 24:4-11 (Reynolds Dep.).  Both the ambulance and the California Highway Patrol vehicles

20   arrived on southbound 880 (*Id.*, Ex. B at 105:17-106:7 (Reynolds Dep.)), and since these vehicles were

21   on the other side of the roadway their access could not have been obstructed by plaintiff's car.  Plaintiff

22   observed the Oakland Fire Department truck arrive in lane number 2 (*Id.*, Ex. A at 81:5-7), and

23   therefore there is evidence that the fire truck was not obstructed by plaintiff's car.

24        Reynolds based his statement that the scene was a crime scene on information that the accident

25   was caused by a hit and run.  Ex. B at 116:12-13 (Reynolds Dep.).  Reynolds conceded that the

26

27   _____
     [4/]    The only photographs that plaintiff took after Reynolds instructed plaintiff to "not take these types
28   of photographs" and to leave the scene were a few photographs moments later of Reynolds grabbing
     plaintiff's press credential, and one photograph five minutes later of the late arriving CHP vehicle.  Chavez
     Dec. ¶¶ 13-14 & Exs. A and B.

accident was not caused by a hit and run.  Ex. B at 107:17-22 (Reynolds Dep.).

Plaintiff, in his role as a media photographer, often has stopped his car at accident scenes on interstate highways and similar roadways in Oakland in order to take photographs, and has not been instructed by police to leave.  Chavez Dec. ¶ 12.

## ARGUMENT

### I.   DISPUTED ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON QUALIFIED IMMUNITY GROUNDS

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in that party's favor, and may not weigh the evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).  "If a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Beck v. City of Upland*, 527 F.3d 853, 861 (9th Cir. 2008).

Defendants contend that they are entitled to summary judgment on qualified immunity grounds under the two-step sequence for resolving qualified immunity claims set forth in *Saucier v. Katz*, 533 U.S. 194 (2000): first, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and, if so, second, "whether the right was clearly established." *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  Disputed issues of material fact preclude summary judgment on either factor.

### A.   Disputed Issues of Material Fact Preclude Summary Judgment on Defendants' Contention That No Constitutional Violation Occurred

#### 1.   Disputed issues of material fact exist as to whether the Officers violated plaintiff's fourth amendment rights by arresting him without probable cause

1    An arrest is unlawful unless probable cause existed under a specific criminal statute.  *Torres*

2    *v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008); *Edgerly v. City and County of San Francisco*,

3    495 F.3d 645, 652 (9th Cir. 2007).  Defendants contend that probable cause existed to arrest plaintiff

4    for violation of two California Vehicle Code Provisions, section 22400(a) and section 2800(a).  There

5    are disputed issues of material fact as to whether probable cause existed under either section.

6               **a.      The record shows disputed issues of fact as to whether there was**
                 **any violation of Vehicle Code section 22400(a)**

7

8    Vehicle Code § 22400(a) provides that "[n]o person shall bring a vehicle to a complete stop

9    upon a highway so as to impede or block the normal and reasonable movement of traffic unless the

10   stop is necessary for safe operation or in compliance with law."  There are clearly disputed issues of

11   fact on this topic.  There is testimony that there was an accident and an overturned car in the same

12   traffic lane as the one in which plaintiff had been driving, and that traffic stopped completely in all four

13   lanes of the freeway because of the accident.  Obviously, plaintiff needed to stop his vehicle as this was

14   "necessary for safe operation."  It is undisputed that traffic was not moving at all in lane number 1,

15   where plaintiff's car was stopped, and that lane number 1 remained blocked the entire time that

16   plaintiff was at the scene.  Moreover, there are disputed issues of fact concerning whether plaintiff's

17   car "impede[d] or block[ed] the normal and reasonable movement of traffic."  Reynolds conceded that

18   lanes numbers 1 and 2 were blocked throughout the entire incident by the overturned car (Gross Dec.,

19   Ex. B at 24:4-20 (Reynolds Dep.)), that lane number 1 needed to be blocked by a vehicle to prevent

20   motorists from driving too close to the overturned car and that even if plaintiff's vehicle was not there

21   that traffic would have had to merge out of lane number 1 due to the accident (Gross Dec., Ex. B. at

22   46:8-20, 53:16-21 (Reynolds Dep.)).

23   Thus, traffic in lane number 1 was blocked by the overturned vehicle, whether or not plaintiff's

24   vehicle was there, so there is a disputed issue of fact whether plaintiff's vehicle caused any additional

25   blockage or impeding of traffic.  Further, plaintiff testified that no emergency vehicles were impeded

26   by his vehicle, and thus there is a disputed issue of fact on this topic as well.  In addition, plaintiff

27   provided evidence that other individuals had stopped vehicles in lane number 1 and lane number 2,

28   and they were not cited (Chavez Dec. ¶ 10) , thus creating a further disputed issue of fact as to whether

1    plaintiff's vehicle impeded traffic.

2         By the statute's terms, a driver cannot be held to violate Vehicle Code § 22400(a) if the driver

3    must stop his vehicle when such a stop, as here, is required for safe operation.  Defendants might argue

4    that plaintiff, even if initially not in violation of Section 22400(a) when he stopped, became in

5    violation of that section when he failed to move his vehicle when traffic conditions permitted such

6    movement.  However, such an interpretation is contrary to the specific terms of Section 22400(a).  And

7    even if such an interpretation were permitted, there are disputed issues of fact concerning this, as

8    plaintiff testified that as soon as he was instructed by Reynolds to return to his car and move it, he

9    commenced to do so, and was prevented from doing so by Reynolds.  There are thus disputed issues

10   of fact that prevent summary judgment as to whether plaintiff was in violation of Vehicle Code

11   § 22400(a).

12              **b.    The record shows disputed issues of fact as to whether there was**
                        **any violation of Vehicle Code § 2800(a)**

13        Vehicle Code § 2800(a) provides: "It is unlawful to willfully fail or refuse to comply with a

14   lawful order, signal, or direction of a peace officer . . . when that peace officer is in uniform and is

15   performing duties pursuant to any of the provisions of this code."  Defendants assert that plaintiff

16   violated this section by disobeying an order by Reynolds to move his car.  Def. Mem. at 9.

17        There are clearly disputed issues of fact as to whether plaintiff violated this provision of the

18   Vehicle Code.  Though defendants assert that plaintiff did not comply with Reynolds' instruction to

19   leave, plaintiff testified that, immediately after his first short conversation with Officer Reynolds in

20   which he was instructed to leave the scene, he complied with the instruction and started walking to his

21   vehicle in order to leave.  He further testified that he would have left, had Officer Reynolds not

22   stopped him again and stated that he was going to issue a citation.  Ex. A at 98:21-99:4; Chavez Dec.

23   ¶¶ 7-8.  Clearly, there are disputed issues of material fact as to whether plaintiff violated Section
     2800(a).[5]

24

25   _____

     [5]     Defendants' contention that "[i]t is undisputed that the officers told plaintiff to move his car a
26   minimum of three times" (Def. Mem. at 9) distorts the record.  Plaintiff testified that he had one short
     conversation with Reynolds, lasting no more than a minute or two, in which Reynolds told plaintiff to leave,
27   and that during this conversation, Reynolds mentioned three times that plaintiff should leave, and that at the
     end of this conversation, plaintiff complied with the order and began walking to his car to leave.  Chavez
28   Dec. ¶ 8.  That Reynolds in one conversation reiterated several times that plaintiff was to leave is not the
     same thing as issuing three separate orders to leave that were disobeyed.  Moreover, defendants' assertion
     that "plaintiff, . . . by his own admission, did not proceed directly to his car in compliance with the officer's

1

2. **Disputed issues of material fact exist as to whether the Officers violated plaintiff's First Amendment right to photograph and gather news concerning police conduct**

2

3    Defendants' contention that "Plaintiff's conduct here falls outside the First Amendment" (Def.

4    Mem. at 5) has no basis in law.  It is well established that the press has a First Amendment right to

5    gather news, "for without some protection for seeking out the news, freedom of press could be

6    eviscerated."  *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972); *see also id*. at 681-82 (there is an

7    undoubted right to gather news "from any source by means within the law"); *Daily Herald Co. v.*

8    *Munro*, 838 F.2d 380, 384 (9th Cir. 1988) ("the First Amendment protects the media's right to gather

9    news"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("[t]he First Amendment

10   protects the right to gather information about what public officials do on public property, and

11   specifically, a right to record matters of public interest"); *Channel 10, Inc. v. Gunnarson*, 337 F. Supp.

12   634, 638 (D. Minn. 1972) (members of the press "have a constitutional right not to be interfered with"

13   by the police so long as they "do not unreasonably obstruct or interfere with the defendant's official

14   investigations of physical evidence or gain access to any place from which the general public is

15   prohibited for essential safety purposes").

16   Plaintiff does not assert, as defendants contend, that he had a right under the First Amendment

17   to stop his vehicle on the freeway, wander in lanes of traffic, and impede emergency vehicles in order

18   to take photographs.  Def. Mem. at 5-6.  As set forth above, there are disputed issues of material fact

19   as to the lawfulness of plaintiff's actions.  Rather, plaintiff asserts a First Amendment right not to be

20   detained or arrested to prevent him from taking photographs of a newsworthy activity, particularly a

21   slow response rate by police to an accident scene.  There are clearly disputed issues of material fact

22   as to this claim.  Plaintiff testified that several times, Reynolds told him that "you don't need to take

23   these kinds of pictures" (Ex. A at 115:9-11; Chavez Dec. ¶¶ 7, 9), thus providing evidence that

24   Reynolds' conduct was motivated not by a desire to ensure that traffic was not impeded, but rather by

25   a desire to prevent photographs of the accident and of late-arriving police from being taken.  Plaintiff's

26

27   order" (Def. Mem. at 9-10) is unsupported by the record.  Defendants make the same assertion at Def. Mem.
     at 4, citing to plaintiff's deposition at 89:11-90:3, but those pages do not support any such claim; in fact,

28   those pages refer to the first conversation between plaintiff and Reynolds, and plaintiff states that he said
     "okay" and that he "was leaving."

testimony that Reynolds initially told plaintiff he was going to give him a citation for not moving his vehicle and then started writing the citation, provides evidence that Reynolds had decided the proper remedy for plaintiff being at the scene and not moving his car quickly enough was a citation, not arrest. And, more critically, plaintiff's testimony that it was only when plaintiff took a photograph of the late arrival of the California Highway Patrol, almost 30 minutes after the accident occurred, that Reynolds arrested plaintiff (telling plaintiff, "that's it, you're under arrest, you don't need to take these kinds of pictures") (Ex. A at 118:2-6; Chavez Dec. ¶ 9), provides evidence that Reynolds' decision to arrest plaintiff was not because of an issue with plaintiff's car, but because plaintiff took a photograph that Reynolds did not want him to take.

This is particularly important, since the events that plaintiff was photographing were a matter of public interest: plaintiff was at an accident scene, in which the police did not respond until 15 minutes after the accident, the California Highway Patrol did not respond until almost 30 minutes after the accident (Chavez Dec. ¶¶ 7, 9), and plaintiff was documenting these events. *See, e.g., Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003) (information that allows citizens to make "informed decisions about the operation of their government" receives the highest degree of First Amendment protection); *Smith*, 212 F.3d at 1333 (police conduct is a matter of public interest). The evidence of Reynold's animus to the type of pictures that plaintiff was taking provides support that defendants were acting to prevent accurate reporting about police conduct.

Thus, there clearly are disputed issues of fact as to whether defendants violated plaintiff's First Amendment rights.

**3.     Even if defendants had probable cause to arrest plaintiff for Vehicle Code violations, there are disputed issues of fact as to whether defendants retaliated against plaintiff in violation of the First Amendment**

To demonstrate retaliation in violation of the First Amendment, a plaintiff must prove that the police officer "took action 'that would chill or silence a person of ordinary firmness from future First Amendment activities" and that the defendant's "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog v. County of Clackamas,* 469 F.3d 1221, 1231-32 (9th Cir. 2006). But-for causation exists if deterrence of First Amendment activities "was a substantial or motivating factor in the defendant's conduct," and "can be demonstrated either through direct or circumstantial

1    evidence." *Mendocino Environmental Center v. Mendocino County,* 192 F.3d 1283, 1300-01 (9th Cir.

2    1999).  Significantly, the Ninth Circuit held in *Skoog* that a plaintiff subjected to retaliatory conduct

3    by the police need not plead and prove the absence of probable cause to maintain a claim.  *Skoog*, 469

4    F.3d at 1232-34.  Thus, even if defendants were correct that undisputed facts established that probable

5    cause existed to arrest plaintiff, plaintiff would still be entitled to maintain a claim for retaliation in

6    violation of the First Amendment.

7        Defendants cannot dispute that being arrested and handcuffed plainly satisfies the first

8    requirement for a retaliation claim.  *See Skoog,* 469 F.3d at 1232 (searching someone's office and

9    seizing materials satisfies first element).  As to the second requirement, plaintiff presented evidence

10   that defendants arrested plaintiff because of a desire to chill plaintiff's First Amendment activities: that

11   Reynolds repeatedly told plaintiff not to take "these kind of pictures"; that Reynolds, who was writing

12   a citation to plaintiff for not moving his vehicle, arrested plaintiff only when plaintiff raised his camera

13   to take a newsworthy picture of a late-arriving CHP vehicle; and that Reynolds accompanied his arrest

14   with the statement that plaintiff was not to take such pictures.  Chavez Dec. ¶¶ 7-9.  This is sufficient

15   evidence to present a dispute issue of material fact as to whether "the deterrence [of plaintiff's First

16   Amendment activity in taking newsworthy photographs] was a substantial or motivating factor" in the

17   officers' conduct.  *Mendocino Environmental Center,* 192 F.3d at 1300.

18       **B.    Disputed Issues of Material Fact Concerning the Actions Taken by Plaintiff and
              the Officers Preclude Summary Judgment on Defendants' Contention That Their
19             Violation of Plaintiff's Constitutional Rights Was Objectively Reasonable Under
              the Circumstances**

20       In determining the second prong of a qualified immunity determination – whether, under the

21   facts alleged, a reasonable official could have believed that his conduct was lawful – "[i]t is the

22   defendant's burden to show that "a reasonable . . . officer could have believed, in light of the settled

23   law, that he was not violating a constitutional or statutory right." *Collins v. Jordan,* 110 F.3d 1363,

24   1369 (9th Cir. 1996).   Where "there is a material dispute as to the facts and circumstances that an

25   officer knew or should have known, or as to the facts regarding what the officer or the plaintiff actually

26   did," the case may proceed to trial.  *Collins*, 110 F.3d at 1370; *see also Liston v. County of Riverside,*

27   120 F.3d 965, 975 (9th Cir. 1997) ("summary judgment in favor of moving defendants is inappropriate

28   where a genuine issue of material fact prevents a determination of qualified immunity until after trial

1     on the merits").

2            Defendants' argument on this point is essentially that, even if plaintiff had a viable First

3     Amendment claim, defendants "could have reasonably believed that their conduct was consistent with

4     plaintiff's First Amendment rights." Def. Mem. at 7.  However, defendants' argument is premised on

5     their contention that there are undisputed facts that "plaintiff remained standing in lanes of traffic on

6     the freeway even after being order three times to return to his car and move it" and "that an Oakland

7     Fire Department emergency vehicle had to negotiate around plaintiff's stopped and driverless vehicle."

8     Def. Mem. at 7.  As discussed above, these "facts" are far from undisputed, as for each one plaintiff

9     has provided evidence to the contrary.  Accepting plaintiff's evidence concerning his actions, as the

10    Court must on this summary judgment motion, that plaintiff's car was not impeding traffic and that

11    plaintiff was obeying the officers' instruction to leave, no reasonable officer could have believed that

12    probable cause existed to arrest plaintiff.  *See Michigan v. Summers*, 452 U.S. 692, 700 (1981) (every

13    arrest "is unreasonable unless it is supported by probable cause").

14           Moreover, plaintiff has submitted evidence that defendants had determined the appropriate

15    method to deal with the alleged public safety issue caused by plaintiff's vehicle was to write plaintiff

16    a citation, not to arrest him, and that was exactly what Reynolds was doing.  Plaintiff presented further

17    evidence that Reynolds' and Garcia's decision to arrest plaintiff was because plaintiff took one

18    additional picture – of a late-arriving police vehicle.  Defendants could not have reasonably believed

19    that they could arrest an individual for taking pictures.  *See, e.g.*, *Beck v. City of Upland*, 527 F.3d 871

20    (arresting someone in retaliation for their exercise of First Amendment rights violates clearly

21    established law); *Connell v. Town of Hudson*, 733 F. Supp. 465, 471 (D.N.H. 1990) (reasonable police

22    officers would understand that they could not chase a news photographer away from an accident unless

23    that photographer was unreasonably interfering with police activity).

24           Finally, pursuant to *Skoog,* it is now clearly established in the Ninth Circuit that "a right exists

25    to be free of police action for which retaliation is a but-for cause even if probable cause exists for that

26    action."  *Skoog*, 469 F.3d at 1235.[6]  Thus, even if the officers reasonably believed that they had

27    probable cause to arrest plaintiff, disputed issues of fact as to retaliation preclude summary judgment

28    ─────────────────
      [6]      At the time of the *Skoog* decision, this right was not clearly established at the time of the *Skoog*
      decision, but as a result of *Skoog*, this right became clearly established.

1    on the second prong of the *Saucier* test on plaintiff's First Amendment claim.

2

3    **II.    SUMMARY JUDGMENT IS IMPROPER ON PLAINTIFF'S STATE LAW CLAIM**

4         Defendants also move for summary judgment on plaintiff's state law claim under California

5    Civil Code § 52.1 (Complaint, Fourth Claim for Relief), solely on the basis that under California state

6    law "while the press may be entitled to limited access to disaster scenes, it enjoys no special right of

7    access to crime scenes at all." Def. Mem. at 8. Defendants clearly are referring to California Penal

8    Code § 409.5, and they argue solely that plaintiff had no right under this statute to be present at this

9    accident scene, on the ground that Reynolds mistakenly believed that it was the scene of a hit and run,

10   and thus was a crime scene.[7/]

11        However, defendants completely ignore plaintiff's rights under the California Constitution.

12   California Civil Code § 52.1 provides that for a right of action for damages and injunctive relief for

13   "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the

14   United States, or of rights *secured by the Constitution or laws of this state*, has been interfered with,

15   or attempted to be interfered with. . . . A law may not restrain or abridge liberty of speech or press."

16   The California Constitution contains a specific provision concerning freedom of the press: "Every

17   person may freely speak, write and publish his or her sentiments on all subjects." California

18   Constitution, Article I, section 2 (a). The free speech and free press rights under the California

19   Constitution are broader than under the U.S. Constitution: "A protective provision more definitive and

20   inclusive than the First Amendment is contained in our state constitutional guarantee of the right of

21   free speech and press." *Wilson v. Superior Court,* 13 Cal.3d 652, 658 (1975). Courts regularly

22   "recognize the important role of the press under our Constitution in scrutinizing the operation of

23   government and its various branches, departments and agencies." *Marin Independent Journal v.*

24

25   [7/]    Defendants also have another section of their Memorandum seeking summary judgment under
         California Civil Code § 52.1, inexplicably asserting that "[t]he only underlying rights plaintiff explicitly
26       claims were violated are those arising under the First and Fourth Amendments." Def. Mem. at 11. However,
         not only did plaintiff refer to the federal and state Constitutions, but plaintiff referred to California Penal
27       Code § 409.5. Complaint ¶ 14.
              Also, if the Court denies qualified immunity for any of plaintiff's claims under 28 U.S.C. § 1983,
28       then summary judgment under California Civil Code § 52.1 must be denied, because Section 52.1 provides
         for a right of action when a person's rights under the United States Constitution are interfered with.

*Municipal Court*, 12 Cal. App. 4th 1712, 1722 (1993). News gathering is thus protected under and is in furtherance of the news media's right to free speech under the California Constitution. *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 165-66 (2003).

As discussed above, plaintiff presented evidence that defendants arrested plaintiff, not because of the interference of his vehicle with traffic or emergency personnel, but because defendants did not want plaintiff taking "these kind of pictures" and reporting on a slow police response to an accident. These disputed issues of facts are sufficient to preclude summary judgment on plaintiff's claim under California Civil Code § 52.1 based on an interference with plaintiff's exercise of rights "secured by the Constitution . . . of this state."

Moreover, there are disputed issues of fact that preclude summary judgment on plaintiff's claim under California Civil Code § 52.1 based on an interference with plaintiff's exercise of rights "secured by the . . . laws of this state," *i.e.,* California Penal Code § 409.5(d). This statute provides that "[w]henever a menace to the public health or safety is created by a calamity" such as an accident or disaster, police officers "may close the area where the menace exists," but subsection (d) provides a right of access to the media: "Nothing in this section shall prevent a duly authorized representative of any news service, newspaper, or radio or television station or network from entering the areas closed pursuant to this section." Cal. Pen. Code § 409.5(d). Penal Code § 409.5(d) is "a statute which represents the Legislature's considered judgment that members of the news media must be afforded special access to disaster sites in order that they may properly perform their function of informing the public." *Leiserson v. City of San Diego,* 184 Cal. App. 3d 41, 51 (1986). While it is correct that *Leiserson* held that Penal Code § 409.5(d)'s right of media access did not apply to crime scenes, *id.* at 52, that does not end the inquiry here. Penal Code § 409.5(d) represents the California Legislature's recognition that news media is entitled to special access to accident scenes. It would turn this right on its head if, when a reporter, relying on this statute, entered a scene in the belief that it was solely an accident scene , the police could promptly arrest the reporter if, unbeknownst to the reporter, it was somehow classified as a crime scene. At the very least, under this strong directive under California law to grant media access to accident and disaster scenes, the reporter is entitled to be advised of a scene's classification as a crime scene and be provided an opportunity to leave the scene. As discussed

above, there are disputed issues of fact whether defendants provided plaintiff an opportunity to leave the scene before arresting him, as plaintiff testified that when he was told by Reynolds to leave, he complied with the order and starting walking to his car, but was then stopped by Reynolds before he could reach his car.[8/]  Moreover, the documentary evidence of the photographs provides further support that plaintiff was in the process of leaving the scene, as the photographs demonstrate only two minutes passed between the time Reynolds first spoke to plaintiff and when Reynolds later stopped plaintiff from leaving (and during which period plaintiff had a conversation with Reynolds that lasted a minute or two).

Moreover, under Penal Code § 409.5(d), it would be improper for a police officer to make a claimed designation that an accident scene was a crime scene, where the claimed designation serves only to strip a reporter of his right of access to a garden variety accident scene without advancing any purported purpose in designating the site a crime scene, such as the preservation of evidence.  Here, where there is evidence that the police officer told the reporter that he "didn't need to take this kind of pictures," a reasonable inference can be drawn from the facts that the purpose in designating the site a crime scene was not to conduct a criminal investigation but to strip the reporter of the right of access to the accident scene.  Thus, there are disputed issues of fact as to whether the designation of the accident scene here as a crime scene was made for the proper reasons, and thus summary judgment on this claim must be denied.[9/]

## III.    SUMMARY JUDGMENT CANNOT BE GRANTED FOR THE CITY OR THE CHIEF

The sole ground asserted by the moving officer defendants as entitling defendants City of Oakland and Chief Tucker (the "City Defendants") to summary judgment is that no constitutional

---

[8/]     This is particularly pertinent here: plaintiff arrived at the scene of an accident, and there was no indication it was a hit and run accident, and the defendants never told plaintiff that they believed it was a hit-and-run scene prior to arresting plaintiff.  Chavez Dec. ¶ 15.  Significantly, Reynolds conceded that the accident was not a hit-and-run.  Gross Dec., Ex. B at107:17-22 (Reynolds Dep.).

[9/]     In the event that the Court grants summary judgment on qualified immunity grounds on plaintiff's federal causes of action, plaintiff requests that the court decline to exercise pendant jurisdiction over plaintiff's state-law causes of action and dismiss them without prejudice, so that plaintiff can pursue them in state court.  *See, e.g., Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996).

1   violation occurred.[10/]   As set forth above (*see* Point I.A., *supra*), disputed issues of material fact

2   preclude summary judgment on this ground.[11/]

3                                          **CONCLUSION**

4          For the reasons stated above, plaintiff respectfully requests that the Court enter an order

5   denying defendants' motion for summary judgment in its entirety.

6   Dated:  April 17, 2009

7                                          GROSS BELSKY ALONSO LLP

8

9                                          By:___/s/ Terry Gross_____
                                                  Terry Gross
10
                                           Attorneys for Plaintiff
11                                         RAYMUNDO CHAVEZ

12

13

14

15

16

17

18

19

20

21

22

23   [10/]      The only moving parties on this summary judgment motion are defendant officers Reynolds and
     Garcia; defendants City of Oakland and Chief Tucker do not move for summary judgment on their own
24   behalf.  Def. Notice of Motion at 1:5-10.  Thus, there is no basis to grant summary judgment as to the City
     Defendants.
25

26   [11/]      In the event the Court holds that the defendant officers are entitled to qualified immunity due to the
     second *Saucier* prong, on the ground that the officers acted reasonably, then there is no basis to grant
27   summary judgment to the City Defendants, because there is no qualified immunity for municipalities.  *See,
     e.g.*, *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) ("A municipality (and its
28   employees sued in their official capacities) may not assert a qualified immunity defense to liability under 28
     U.S.C. § 1983").