1  JOHN A. RUSSO, City Attorney, SBN 129729
   RANDOLPH W. HALL, Assistant City Attorney, SBN 080142
2  RACHEL WAGNER, Supervising Trial Attorney, SBN 127246
   CHRISTOPHER KEE, Deputy City Attorney, SBN 157758
3  One Frank H. Ogawa Plaza, 6th Floor
   Oakland, California 94612
4  Telephone: (510) 238-7686,  Fax: (510) 238-6500
   Email:  ckee@oaklandcityattorney.org
5  26189/565813

6  Attorneys for Defendants,
   CITY OF OAKLAND, et al.
7

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  RAYMUNDO CHAVEZ,                      Case No. C 08-04015 CRB

12              Plaintiff,                **DEFENDANT OFFICERS KEVIN
                                          REYNOLDS AND CESAR GARCIA'S
13       v.                               REPLY MEMORANDUM OF POINTS
                                          AND AUTHORITIES IN SUPPORT OF
14  CITY OF OAKLAND, CHIEF WAYNE G.       MOTION FOR  SUMMARY JUDGMENT
    TUCKER, OFFICER K. REYNOLDS,          ON THE GROUNDS OF QUALIFIED
15  OFFICER CESAR GARCIA, and DOES 1-20,  IMMUNITY**
    inclusive,
16                                        Date:      May 1, 2009
             Defendants.                  Time:      10:00 a.m.
17                                        Courtroom: 8, 19th Floor

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY MEMORANDUM                              C08-04015
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY

# I.    INTRODUCTION

Plaintiff's opposition to defendants' motion for summary judgment on the grounds of qualified immunity makes explicit what his complaint implied:  plaintiff claims a right to disobey traffic laws, interfere with police officers on the scene of an accident, impede access by emergency vehicles, and compromise a potential crime scene all in the name of the people's right to know.

The defendant officers could have reasonably believed that plaintiff's rights as a member of the press did not extend so far, and they are entitled to qualified immunity.  While taking issue with minor details of the events, plaintiff fails to refute the dispositive showing that (1) he unlawfully stopped and exited his car on a freeway (2) the car impeded access to the scene by an emergency vehicle trying to get to the scene of the accident (3) his presence was a distraction to the officers who were confronted with a major accident that they believed at the time was a felony crime scene and (4) he continued to take pictures after Officer Reynolds told him to move his car.

These facts are sufficient to establish that the officers could have reasonably believed that their conduct was lawful under both the First and Fourth Amendments of the U.S. Constitution. They are also sufficient to deny plaintiff recovery under state law.

# II.    LEGAL ARGUMENT

**A.    Plaintiff Has Failed To Show That There Is An Issue Of Fact As To The Defendant Officers' Reasonable Belief That They Were Acting In Accordance With Clearly Established Law Under The First And Fourth Amendments**

At its core, plaintiff's principal contention in opposition is that the officers are not entitled to qualified immunity because plaintiff was intending to leave the scene of the accident, but the officers didn't give him a chance.  Plaintiff's intentions, however, are irrelevant to the qualified immunity analysis.  The only relevant inquiry is whether the <u>officers</u> could have reasonably believed that their conduct was lawful under clearly established law.  <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1443 (9th Cir. 1991) (<u>citing</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987)). The record here shows that in fact they could.

It is undisputed that after the officers asked plaintiff to leave[1], he continued to use his

---

[1] Plaintiff attempts to raise a fact issue about the requests to leave, contending that the defendants' assertion that he was asked three times to leave is misleading, because those requests took place over the course of a short period of time.  There is however no dispute that plaintiff was

1   camera to take photographs of the scene.  Indeed, plaintiff includes these express allegations in his

2   complaint.  See Complaint, paragraphs 20-22[2].  In his deposition, plaintiff testified under oath (in a

3   detail conspicuously absent from his declaration) that at the time he took the pictures he took of

4   approaching emergency vehicles after Officer Reynolds had told him to move his car he had

5   stopped and turned around.  See Supplemental Declaration of Rachel Wagner, Exhibit 4 at 93:21-

6   97:10; 116:24-117:25.  So, in his sworn testimony and his pleadings, plaintiff admits that (1)

7   Officer Reynolds asked him to return to his car and move it (2) rather than simply go back and

8   move it he stopped, turned around, and continued to take pictures.[3]

9        The allegations in the complaint and plaintiff's own deposition testimony thus correspond

10   precisely with the officers' account with respect to the material facts in support of qualified

11   immunity:  they saw plaintiff on the scene taking photographs, they asked him to leave, he agreed

12   to do so but rather than move his car as requested, they observed him still taking photographs.

13   According to plaintiff's own account, he was only arrested after the officers observed him still on

14   the scene taking a photograph after they had told him to leave. Supplemental Declaration of Rachel

15   Wagner at 117:19-118:22.

16        Plaintiff also takes issue with the fact that his car impeded access to the accident scene by

17   emergency vehicles, claiming that since traffic was already stopped, his car wasn't really in the

18   way.  Overlooking the fact that traffic would obviously be unable to resume its normal flow if

19   plaintiff's car remained parked in lane number 1, plaintiff's account omits a critical piece of

20   evidence.  As Officer Reynolds testified, while he was talking to plaintiff, he observed an Oakland

21   Fire Department vehicle approaching the scene, and that the vehicle had to merge into traffic in the

22

23   indeed asked three times to leave the scene, that he did not do so, and that he continued to take
     photographs after at least one conversation with the officers in which they asked him to leave the
24   scene. See Declaration of Rachel Wagner (Wagner Dec.), Exhibit 4 at 74:1-16; Declaration of
     Raymundo Chavez, paragraph 9.

25     [2] Plaintiff's counsel has averred that the allegations in paragraph 21 of the complaint are
26   incorrect.

     [3] Plaintiff also concedes in his declaration, as he did in his complaint, that after he was asked to
27   leave, he argued with the officers about his right to be on the scene, giving further support to the
     officers' reasonable belief that plaintiff was not in fact going to leave as requested.  See Declaration
28   of Raymundo Chavez, paragraph 7; Complaint,  paragraph 20.

DEFENDANTS' REPLY MEMORANDUM          -2-                    C08-04015
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY

1  Number 2 lane to get around plaintiff's vehicle.  Declaration of Rachel Wagner (Wagner Dec.)

2  Exhibit 1 at 58:3-6; 71:21-72:4.   In opposition, plaintiff offers the conclusion that access was not

3  impaired, because he saw the Fire Department vehicle in the Number 2 lane.  But that is precisely

4  the point:  emergency personnel had to maneuver around plaintiff's car from the Number 1 lane

5  into the Number 2 lane to get close to the accident victim.  And, in another admission missing from

6  his declaration, plaintiff testified under oath that <u>he did not see if the fire engine had to maneuver</u>

7  <u>around his car parked on the freeway.</u>  Supplemental Declaration of Rachel Wagner, Exhibit 4 at

8  75:19-77:1. Officer Reynolds, though, <u>did</u> in fact see the fire engine have to merge into the number

9  2 lane to get around plaintiff's car.  Wagner Dec., Exhibit 1 at 58:3-6; 71:21-72:4.  Here again, one

10  of the grounds for Officer Reynolds' action—that plaintiff's car was blocking access by emergency

11  vehicles, is not in dispute.

12      Plaintiff also asserts that he was never in the number 2 or number 3 lanes.  While the

13  officers' testimony is to the contrary, plaintiff has in any event no answer to Officer Reynolds'

14  testimony that other drivers were blowing their horns at plaintiff, swerving to avoid him (Wagner

15  Dec, Exhibit 1 at 147:20-23; 58:8-11), and, most critically, that plaintiff's continued presence was

16  actively interfering with the officers' ability to manage the situation, which, they believed was a

17  crime scene. Wagner Dec.,  Exhibit 1 at 65:24-3, 102:10-103:20, 129:4-23; Exhibit 5 at 74:14-22;

18  76:6-18; 77:9-78:2.

19      As to this latter point, plaintiff asserts only that Officer Reynolds eventually testified that it

20  was not in fact a crime scene.  Once again, plaintiff misconstrues the measure of qualified

21  immunity:  what the officer reasonably believed <u>at the time plaintiff was arrested</u>.  <u>See e.g.</u> <u>Graham</u>

22  <u>v. Connor</u>, 490 U.S. 486, 396-397 (1989).  There is no dispute that during the confrontation with

23  the plaintiff, the officers were operating under the belief, based on the statement of an eye witness,

24  that the accident might have been a felony hit and run.  Wagner Dec.; Exhibit 1 at 32:12-34:25;

25  Exhibit 2 at p.3. Officer Reynolds' subsequent testimony does nothing to undermine the officers'

26  reasonable belief <u>at the time they arrested him</u> that plaintiff was interfering with a potential crime

27  scene.

28      Plaintiff also alleges that other drivers stopped and exited their vehicles, but he did not see

1  them arrested.  As an initial matter, the officers' conduct with respect to these other drivers has no

2  material bearing on their reasonable belief that their conduct toward <u>plaintiff</u> was lawful, which is

3  of course the standard for qualified immunity.  Furthermore, plaintiff concedes he has no

4  knowledge of what happened to the other drivers and their vehicles.  In fact, as Officer Garcia

5  testified, his role on the scene was to assist drivers of vehicles that had stopped to merge back into

6  traffic and leave the scene.  Supplemental Declaration of Rachel Wagner; Exhibit 5 at 47:21-48:2.

7  What plaintiff observed or did not observe with respect to other vehicles stopped at the scene is

8  immaterial.

9       Plaintiff spends considerable rhetorical capital trying to create an issue of fact as to whether

10  plaintiff was in violation of the provisions of the vehicle code for which he was cited.  Once again,

11  plaintiff misapprehends the proper inquiry.  The question under qualified immunity analysis is

12  whether the officers could have reasonably believed that there was probable cause to detain the

13  plaintiff.  While plaintiff parses the language of the statutes searching for an alternate reading that

14  would show he was not in violation of the law, the fact remains plaintiff did not simply stop his car,

15  which is proscribed under Vehicle Code section 22400—he got out and wandered around on the

16  highway.   And rather than return to his car, as ordered, he stopped to take additional photographs;

17  in other words, he disobeyed an order of a police officer, contrary to the dictates of Vehicle Code

18  section 2800.  In either case, it was reasonable for the officers to conclude that the available facts

19  suggested "a fair probability that the suspect has committed a crime." <u>Tatum v. City and County of</u>

20  <u>San Francisco</u>, 441 F.3d 1090, 1094 (9th Cir. 2006).

21       Here too, it is no answer that plaintiff intended eventually to comply with the law.  The

22  focus in qualified immunity analysis is on the officers' belief, not plaintiff's intentions. The officers

23  here were faced with a major injury accident—an overturned vehicle, an injured driver, major

24  traffic congestion jeopardizing access by emergency vehicles, and witness reports that the accident

25  was caused by a felony hit and run.  Plaintiff lingered on the scene after being asked to leave, his

26  (and his car's) continued presence was a distraction for the officers, and indisputably interfered

27  with access to the scene by emergency vehicles. Plaintiff's argument in essence that "I would have

28  complied, once I was finished doing what I wanted" is insufficient to overcome the officers'

1   reasonable belief that they were acting lawfully.  Plaintiff's own admitted behavior—stopping his

2   car on the freeway and getting out, arguing with the officers, continuing to take photographs after

3   he was asked to leave—was sufficient to support the officers' belief that their conduct was proper

4   under the law.

5        Plaintiff also contends that the more reasonable approach would have been to cite plaintiff

6   and not arrest him.  But the fact that a plaintiff can propose a course of conduct that he or she

7   claims is more reasonable doesn't mean that the officers' conduct is inherently unreasonable.

8   "[O]fficials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or

9   one of law." Butz v. Economou, 438 U.S. 478, 507 (1978).  As our Supreme Court has repeatedly

10  emphasized, "the qualified immunity defense ... provides ample protection to all but the plainly

11  incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 342 (1986).

12       Plaintiff has failed to raise an issue of fact sufficient to overcome the officers' showing that

13  they reasonably believed they were acting in accordance with the law, and they are entitled to

14  summary judgment accordingly.

15  **B.    Plaintiff Has Failed To Show A Violation Of His First Amendment Rights.**

16       While there may well be a First Amendment right to gather news, plaintiff has no response

17  to the defendants' showing that members of the press enjoy no First Amendment right of access to

18  the scenes of crimes and accidents superior to that of the general public. Branzburg v. Hayes, 408

19  U.S. 665, 684-685 (1972); Houchins v. KQED, 438 U.S. 1, 10-11 (1978); see also Los Angeles

20  Free Press Inc. v. City of Los Angeles, 9 Cal. App. 3d 448, 455 (1970) and federal authorities cited

21  therein.  The right of access plaintiff sought here was unquestionably superior to the general public,

22  and thus broader than the rights afforded the press under the First Amendment.  As defendants

23  pointed out in their moving papers, no member of the public could reasonably claim a right when

24  coming upon an accident and potential crime scene, to simply stop their car on the freeway and get

25  out in order to get a closer look, let alone, as plaintiff does here, a right to remain on the scene even

26  after being asked to leave by a police officer.

27       Moreover, the Supreme Court has made clear that First Amendment rights are not absolute

28  but exist in balance with other compelling societal interests.  As defendants explained earlier

1

2    civil liberties, as guaranteed by the Constitution, imply the existence of an organized
     society maintaining public order without which liberty itself would be lost in the

3    excesses of unrestrained abuses. The authority of a municipality to impose
     regulations in order to assure the safety and convenience of the people in the use of

4    public highways has never been regarded as inconsistent with civil liberties but
     rather as one of the means of safeguarding the good order upon which they

5    ultimately depend. The control of travel on the streets of cities is the most familiar
     illustration of this recognition of social need. Where a restriction of the use of

6    highways in that relation is designed to promote the public convenience in the
     interest of all, it cannot be disregarded by the attempted exercise of some civil right

7    which in other circumstances would be entitled to protection

8    Cox v. New Hampshire, 312 U.S. 569, 574 (1941)

9         Under this Supreme Court authority, the officers could have reasonably believed that

10   whatever rights plaintiff may have had must yield to their obligation as police officers to "assure

11   the safety and convenience of the people in the use of the public highways."

12        Plaintiff contends in the alternative that there are fact issues as to a potential claim

13   for retaliation under the First Amendment.  Defendants note two points at the threshold: (1)

14   it is not at all clear that plaintiff has stated a retaliation claim in his complaint and (2)

15   plaintiff's detention occurred contemporaneously with the claimed exercise of his rights,

16   making it at best an awkward fit into the retaliation framework.  But more fundamentally,

17   the fact that there may even arguably be facts that suggest a retaliation claim is ultimately

18   irrelevant to the question raised by this motion: could the officers have reasonably believed

19   that their conduct was lawful under the First and/or Fourth Amendments.  As explained

20   above, the law is that the press does not have any greater right of access to a crime scene

21   than the members of the general public. The law is also that exercise of rights of expression

22   must on occasion yield to "social needs" including, specifically, "the use of the highways."

23   What defendants have shown in their motion is that the officers could have reasonably

24   believed that plaintiff had no First Amendment right to remain on the scene.  If they could

25   have reasonably believed that he had no First Amendment rights to begin with, any inquiry

26   into a retaliation claim based on a purported exercise of those rights is superfluous.

27   **C.    Summary Judgment Is Proper With Respect To Plaintiff's State Law Claims.**

28        Plaintiff is correct that California Civil Code section 52.1 protects against violations of

DEFENDANTS' REPLY MEMORANDUM          -6-                         C08-04015
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY

1  individual's rights under the California Constitution.  However, the complaint only makes reference

2  in the broadest terms to "the California Constitution."  While his opposition now claims a right

3  under Article I, section 2(a), that provision is nowhere mentioned in his pleading.  It is axiomatic

4  that a motion for summary judgment is framed by the pleadings; plaintiff should not be able to

5  avoid summary judgment by invoking a statutory provision that he failed to specify in his

6  complaint. See e.g. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-1292 (9th Cir. 2000).

7          As to plaintiff's assertion that summary judgment is improper under Penal Code section

8  409.5, plaintiff concedes that the right does not extend to crime scenes, but alleges that it does give

9  the press "special access" to accident scenes.  However, Lieserson v. City of San Diego County,

10  184 Cal. App. 3d 41 (Cal. App. 1986) which plaintiff cites for this proposition, expressly

11  recognized that access may be denied so long as the news gathering activity does not "interfere

12  with emergency crews performance of their duties."  Id. at 49, 51.  Indeed, Lieserson holds that

13  officers need not wait until actual interference occurs, but that a reasonable belief that a press

14  presence will interfere is sufficient.  Id. at 51. Plaintiff's presence here was both a distraction to the

15  responding officers and  impeded access by an emergency vehicle to the scene.  Section 409.5 (d) is

16  no defense.

17          Plaintiff also argues that he could not have been properly denied access on the grounds that

18  the accident was a crime scene because Officer Reynolds testified that, as it turned out, there was

19  no identifiable crime.  There is no merit to that position. Lieserson itself upheld exclusion of the

20  press on the grounds that an accident was a "possible crime scene" even though subsequent events

21  proved that it was not. Id. at 46, 53 (emphasis supplied).  Plaintiff's position would result in the

22  untenable situation that the press would always have access to a potential crime scene until such

23  time as it was determined that a crime had been committed.  The potential for destruction of

24  evidence and compromise of the crime scene in such circumstances is obvious.  The better

25  approach would be to deny access if the responding officers suspect a crime has been committed,

26  but to allow access as soon as it becomes clear that no crime occurred. Plaintiff in any event offers

27  no legal authority to support his position, which is contrary to the very case he invokes in support

28  of his arguments.

DEFENDANTS' REPLY MEMORANDUM          -7-          C08-04015
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY

**D.    The Court May Enter Judgment For The City On Its Own Motion Because There Is No Underlying Constitutional Violation.**

Plaintiff is correct that a city is not entitled to qualified immunity, and that a city is not necessarily free of liability simply because its employees may be entitled to qualified immunity. Here, however, where there is no underlying federal constitutional violation of plaintiff's rights by the defendant officers, there can be no liability on the part of the City of Oakland.   City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996). And while it is true that the City is not a moving party in this motion, if the court were to conclude that there is indeed no constitutional injury here, it could of course dismiss the City sua sponte.   See Silverton v. Department of Treasury of U.S. of America, 644 F.2d 1341, 1345 (9th Cir. 1981).

## II.    CONCLUSION

Plaintiff, as a member of the press, had no constitutional right to park his car in the fast lane of the freeway at the scene of a possible hit and run accident and then walk around on the highway taking pictures, even after the defendant officers asked him to leave.  Even if his constitutional rights were implicated under these facts, the defendant officers could have reasonably believed that their own conduct was in conformity with the law.  For these and all the foregoing reasons, the officers are entitled to qualified immunity and must be dismissed as individual defendants.

Dated: April 24, 2009

                               JOHN A. RUSSO, City Attorney
                               RANDOLPH W. HALL, Chief Assistant City Attorney
                               RACHEL WAGNER, Supervising Trial Attorney
                               CHRISTOPHER KEE, Deputy City Attorney

                          By: /s/Christopher Kee
                               Attorneys for Defendants,
                               CITY OF OAKLAND, et al.

DEFENDANTS' REPLY MEMORANDUM             -8-                          C08-04015
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON THE GROUNDS OF QUALIFIED
IMMUNITY