IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMUNDO CHAVEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants.                       / | No. C 08-04015 CRB<br><br>**MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT** |

      This section 1983 civil rights action arises out of the arrest of plaintiff, a newspaper photographer, for exiting his car on a freeway to take photographs of an accident. Now pending before the Court is defendants' motion for summary judgment on qualified immunity grounds. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, defendants, motion is GRANTED.

**PLAINTIFF'S DECLARATION TESTIMONY**

      Plaintiff is a staff photographer for the Oakland Tribune. On May 4, 2007, he was driving northbound on highway 880 when traffic in all four lanes came to a complete stop. He observed one car stopped in front of him, an overturned car, and a woman on the ground. Plaintiff exited his stopped car and approached the scene. He observed that the overturned vehicle was blocking lanes 1 and 2. He also observed the occupants of at least six other cars exit their vehicles.

Plaintiff wore his press pass lanyard around his neck and placed his press parking pass issued by the Oakland Police Department in the windshield of his car. He began taking photographs of the scene for the Tribune.

After plaintiff had been at the scene for approximately 15 minutes, he observed Officer Reynolds of the Oakland Police Department. A few minutes later Reynolds approached plaintiff and asked if he had witnessed the incident. Plaintiff responded no, and advised that he was with the press. Reynolds asked plaintiff where he had parked his car. Plaintiff identified his car in lane 1 and Reynolds directed plaintiff to go to his car and leave. Plaintiff responded that as a member of the media he had a right to cover accident scenes. Reynolds retorted that "he didn't care, that [plaintiff] had to go back to [his] car and leave because [he] didn't 'need to take these kind of pictures.'" Plaintiff repeated that as a member of the media he had the right to be there. Reynolds again stated that it was a crime scene and instructed plaintiff to return to his car and leave. Plaintiff said okay and started walking to his car. This entire conversation lasted a minute or two.

As plaintiff was walking to his car he heard an ambulance at the scene behind him, traveling the southbound lanes of 880, on the other side of the median, and he turned to look. Reynolds approached and told plaintiff he was going to issue plaintiff a citation; he grabbed plaintiff's press credential, and demanded his driver's license and proof of insurance, as well as vehicle registration.

Plaintiff started walking toward his car to retrieve his registration when he heard the first California Highway Patrol ("CHP") car arrive at the scene. This was approximately 30 minutes after the accident. The CHP car was approaching on southbound 880 with its lights flashing, on the other side of the median. Plaintiff believed the late arrival of the CHP was newsworthy and therefore raised his camera to take a picture of the arriving CHP car, while he continued to walk. Reynolds immediately stood in front of plaintiff, grabbed his camera, and said: "that's it, you're under arrest, you don't need to take these kinds of pictures." Reynolds and Officer Garcia then handcuffed plaintiff and forced him to sit on the highway near the overturned car for approximately 30 minutes. When they finally released plaintiff

2

from the handcuffs, Reynolds warned plaintiff not to ever come there again and take those kind of pictures.

## PROCEDURAL HISTORY

Plaintiff subsequently filed this section 1983 lawsuit. He alleges that Officers Reynolds and Garcia violated his First Amendment rights and that they arrested him without probable cause in violation of his Fourth Amendment rights. He also makes Monell claims against the City of Oakland. Defendants now move for summary judgment on the ground of qualified immunity.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (usually the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

//
//

## DISCUSSION

### A. Qualified Immunity Standard

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity involves a two-part test. The court determines whether, taken in the light most favorable to the plaintiff, the defendants' conduct violated the constitution, and, if so, the court next determines whether the right was clearly established at the time of the violation. A court, in its discretion, may address the prongs in any order. Pearson v. Callahan, --- U.S. --- 129 S.Ct. 808, 818 (2009).

> The operation of the "clearly established" standard depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. [T]he injured party need not establish that the Defendants behavior had been previously declared unconstitutional. The dispositive inquiry is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.

Rodis v. City, County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009) (internal quotation marks and citations omitted).

"Where disputed facts exist, [the court] assume[s] that the version of the material facts asserted by [the] Plaintiff [ ], as the non-moving party, is correct." KRL v. Estate of Moore, 512 F.3d 1184, 1189 (9th Cir. 2008). The Court's inquiry, then, is whether the defendants would be entitled to qualified immunity as a matter of law assuming all factual disputes are resolved in plaintiff's favor.

### B. First Amendment Claim

Plaintiff alleges that defendants violated his First Amendment right "not to be detained or arrested to prevent him from taking photographs of a newsworthy event." Plaintiff's Opposition at 9. Defendants are entitled to qualified immunity on this claim as a matter of law.

//

**1.     Defendants' conduct did not violate the First Amendment.**

The press has no First Amendment right to access accident or crime scenes if the general public is excluded. See Houchins v. KQED, 438 U.S. 1, 10-11 (1978) (holding that the press does not enjoy a constitutional right to access to news sources); Branzburg v. Hayes, 408 U.S. 665, 684-85 (1972) ("Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded."); see also Los Angeles Free Press Inc. v. City of Los Angeles, 9 Cal. App. 3d 448, 455 (1970) ("Restrictions on the right of access to particular places at particular times are consistent with other reasonable restrictions on liberty based upon the police power, and these restrictions remain valid even though the ability of the press to gather news and express views on a particular subject may be incidentally hampered.").

Even assuming, as plaintiff contends, that the officers arrested plaintiff to prevent him from taking a photograph, he did not have a First Amendment right to take the photograph in the first place in the absence of evidence that the general public is allowed such access to accident sites, and this accident in particular. Plaintiff, however, does not offer any evidence that suggests that the general public had a right to exit their vehicles on the freeway and stand in the freeway to take photographs. His declaration assertion that at the time of his arrest he saw at least one other stopped vehicle with its occupant outside the car is insufficient. There is no evidence in the record as to what that person was doing; perhaps the person was a witness to the accident. Moreover, common sense dictates that members of the general public are not allowed to exit their cars in the middle of the freeway to view an accident scene.

In the alternative, plaintiff contends that he has a valid claim for *retaliation* in violation of his First Amendment rights, that is, that the officers arrested him because he took the photographs, and in particular, the photograph of the approaching CHP car just before his arrest. His complaint, read liberally, does not include any such claim. Nevertheless, if he does not have a First Amendment right to take photographs while standing in the middle of

5

the freeway in the first place, then arresting him for taking such photographs could not have been in retaliation for the exercise of his First Amendment rights.

Plaintiff's reliance on Skoog v. County of Clackamas, 469 F.3d 1221 (9th Cir. 2006) is unavailing. There the plaintiff alleged that the defendant officer retaliated against him for filing a lawsuit against the police–classic First Amendment activity. Even if Skoog means that a plaintiff need not prove the absence of probable cause to state a valid First Amendment retaliation claim, and even if such law is clearly established, Skoog in no way suggests that a member of the press has a First Amendment right to exit his car in the fast lane of the freeway in order to take photographs. None of the cases cited by plaintiff address the lack of a First Amendment right in these circumstances in the first place.

Finally, plaintiff emphasizes that under state and local law the press has a right to access accident and crime scenes. He does not explain, however, how such rights are relevant to whether he as a member of the press has a *federal* First Amendment constitutional right. His section 1983 claim is based on a violation of his federal rights.

**2.    Any First Amendment right was not clearly established.**

Even assuming that members of the press have a federal First Amendment right to exit a vehicle in the middle of a freeway to photograph an accident, such right was not clearly established in May 2007. Plaintiff does not cite a single supportive case with facts remotely similar to this case, that is, a case that suggests that police officers cannot stop a newspaper photographer from standing in the middle of the freeway to take photographs. The facts as alleged by plaintiff do not demonstrate that it would be clear to a reasonable officer that his conduct in arresting plaintiff would violate the First Amendment of the United States Constitution. The section 1983 First Amendment claim fails.

**C.    The lack of probable cause claim fails.**

Defendants arrested plaintiff for violation of Vehicle Code section 22400(a) and section 2800(a). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United

6

States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). An arrest is unlawful unless probable cause existed under a specific criminal statute. See Torres v. City of Los Angeles, 548 F.3d 1197, 1207 (9th Cir. 2008).

### 1. Vehicle Code section 22400(a)

Section 22400 provides that "[n]o person shall bring a vehicle to a complete stop upon a highway so as to impede or block the normal and reasonable movement of traffic unless the stop is necessary for safe operation or in compliance with the law." Plaintiff asserts that he initially stopped his car because traffic came to a stop due to the accident, thus his stop was "necessary for safe operation." Traffic remained at a standstill in lane no. 1, where he had left his car, and the lane remained blocked the entire time he was at the scene. Therefore, he contends, the officers could not have reasonably believed that he was impeding the normal movement of traffic and violating section 22400. He emphasizes that Officer Reynolds testified that even if plaintiff's vehicle was not stopped in lane no. 1, vehicles would have had to merge out of lane no. 1 to maneuver around the accident. He argues that this evidence creates a genuine dispute as to whether his vehicle impeded traffic and therefore whether there was probable cause to arrest him for leaving his car in lane no. 1 on the freeway.

Plaintiff ignores that Officer Reynolds testified that he observed an Oakland Fire Department vehicle that was required to merge from lane no. 1 into lane no. 2 to avoid plaintiff's vehicle: "And they came behind Mr. Chavez's vehicle, and basically they had to maneuver around it to reach the scene." Wagner Declaration ("Decl."), Exh. 1 at p. 72, lines 2-4. Plaintiff's declaration statement that he "observed the Oakland Fire Department truck arrive in lane number 2," Plaintiff's Decl. ¶ 11, does not create a genuine dispute of fact. His statement is consistent with Officer Reynolds' testimony that the truck had to merge into lane no. 2 to maneuver around plaintiff's vehicle. Moreover, at his deposition, plaintiff testified that he is not sure if the fire truck went around his vehicle, that he did not see one way or the other. Wagner Supp. Decl., Exh. 4 at pages 72-74. Thus, plaintiff does not offer any evidence that disputes Reynolds' testimony that the fire truck had to maneuver around plaintiff's vehicle. Accordingly, Officer Reynolds could have reasonably believed that

7

1  plaintiff's exit of his vehicle in a lane on the freeway was impeding traffic in violation of the
2  Vehicle Code.
3       Plaintiff also argues that the plain language of the statute only prohibits stopping one's
4  vehicle, and that in light of the accident he had to initially stop his vehicle since traffic came
5  to a stop. He contends that his subsequent exit of his vehicle does not fall within the literal
6  language of the statute.
7       Assuming that plaintiff's interpretation of the Code is correct, and that defendants
8  therefore did not have probable cause to believe that plaintiff had violated section 22400(a),
9  defendants are still entitled to qualified immunity because under these circumstances it would
10 not be clear to a reasonable officer that he could not arrest plaintiff for violating the Vehicle
11 Code. Plaintiff had left his car in a lane of traffic, meaning he could not move it when it
12 became possible, and as a result plaintiff had impeded the fire truck's access to the accident.
13 The officers' belief that this conduct violated the Vehicle Code was reasonable.
14      Plaintiff's assertion that he intended to move his car after asked by the officer is
15 irrelevant; the Vehicle Code does not provide an exception for people who briefly exit their
16 car on the freeway to take photographs–it prohibits the stopping of the car period.
17      In sum, the record, as asserted by plaintiff, does not support a finding that the officers
18 must have known that plaintiff did not violate the Vehicle Code, that is, that they did not
19 have probable cause for his arrest. Accordingly, the officers are entitled to qualified
20 immunity on the Fourth Amendment claim.

### 2. Vehicle Code section 2800(a)

22 Section 2800(a) provides: "It is unlawful to willfully fail or refuse to comply with a
23 lawful order, signal, or direction of a peace officer . . . when that peace officer is in uniform
24 and is performing duties pursuant to any of the provisions of this code." Defendants assert
25 plaintiff violated this provision when he failed to move his car as directed.
26      Plaintiff asserts that summary judgment must be denied because "after his first short
27 conversation with Officer Reynolds in which he was instructed to leave the scene, he
28 complied with the instruction an started walking to his vehicle in order to leave." Opposition

8

at 8. Plaintiff's argument ignores that–according to plaintiff's own testimony–during that short conversation Officer Reynolds directed plaintiff to move his car three times. After the first time plaintiff did not obey; instead, he asserted that as a member of the press he had the right to leave his car unattended in a freeway lane while he took photographs. A reasonable officer in Officer Reynolds' position could have believed that this conduct alone was a willful refusal to comply with an order of uniformed police officer. Plaintiff does not offer any explanation as to why his initial refusal to comply was not a violation of the Vehicle Code. The fact that only a few minutes passed between when he was directed to move his car and when he finally agreed to move his car does not mean that he did not–at least initially–willfully refuse to comply with the officer's orders. At a minimum, the law was not clearly established such that a reasonable officer in defendants' position would know that arresting plaintiff for failing to obey the officer's order was unlawful, that is, would know that he did not have probable cause for the arrest.

## CONCLUSION

Defendants' motion for summary judgment on the federal claims is GRANTED. At a minimum, the law was not clearly established that an officer could not arrest someone for exiting his car in the lane of a freeway to take photographs of an accident scene. The law was also not clearly established that an officer could not arrest someone for refusing to comply with an order from the officer when, rather than immediately complying, the person asserts that he has the right to stand in the freeway and take photographs. Finally, the law was not clearly established that members of the press have a federal First Amendment right to leave a vehicle unattended in a lane of a freeway in order to photograph an accident.

The Court declines to exercise supplemental jurisdiction of plaintiff's state law claim and instead dismisses it without prejudice.

**IT IS SO ORDERED.**

Dated: June 2, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

C:\Documents and Settings\USDC\Local Settings\Temp\notes56FD74\chavezorder.wpd 9